Frank ANDRES and Joan Andres,
Plaintiffs-Respondents,

v.

ALPHA KAPPA LAMBDA FRATERNITY (National Fraternity), and Alpha Kappa Lambda Fraternity (Local Chapter), Defendants-Appellants.

No. 68633.

Supreme Court of Missouri,
En Banc.

May 19, 1987.
Rehearing Denied June 16, 1987.

Tom Oswald, Kirksville, for AKL Local Chapter.

Hamp Ford, Columbia, for AKL National.

Donald L. Schlaprizzi, C. Dennis Barbour, St. Louis, for respondents.

RENDLEN, Justice.

Joan and Frank Andres (respondents) seek damages in this wrongful death action, § 537.080,[1] against Xi Chapter of the Alpha Kappa Lambda Fraternity (Local) and The Fraternity of Alpha Kappa Lambda (National) for the death of their son, David Andres (decedent) while a student at Northeast Missouri State University.[2]

Almost twenty years of age at the time of his death, decedent was a member of both the Local and National fraternities and resided in the fraternity house owned by a group of Xi Chapter alumni.

During the evening of December 11, 1979, and the early morning hours of December 12, the Local sponsored a "mixer" at its house with the Delta Zeta Sorority at which alcoholic beverages were furnished to members of the Local as well as the Sorority without restriction as to age. The Local's social committee chairman estimated that approximately 60 or 70 percent of the Local's membership was under the age of twenty-one years and the evidence disclosed that neither the Local nor the National had an established policy governing alcohol consumption at fraternity functions by individuals under the lawful age (twenty-one) for consumption of alcohol.[3] Though the National had adopted a policy against "hazing" and required compliance with that directive, the National did not participate in the day-to-day management of the Local. Further, the National neither disciplined nor took corrective action when it came to its attention that a local chapter furnished alcoholic beverages to those under the lawful age because such measures were considered impractical. While alcoholic beverages were available to those attending social events, at "mixers" the practice of the Local was to provide hard liquor in mixed drinks for sorority guests but it was not to be served in straight shots and members were expected to drink only beer which also was furnished.

Decedent, who was known to have maintained his own supply of liquor at the house was observed drinking before and following the "mixer"[4] and during the ear-

---

**1.** Unless otherwise indicated references are to Missouri Revised Statutes 1986.

**2.** Northeast Missouri State University was originally named as a defendant, however, its motion to dismiss was sustained on the grounds of governmental immunity. That dismissal has not been challenged and is not an issue in this appeal.

**3.** Section 311.310 prohibits the sale or providing of alcoholic beverages to individuals under twenty-one years old. *See infra* note 5.

**4.** Respondents' objections to testimony of both defendants' witnesses that they observed decedent drinking *during* the "mixer" were sustained on the ground that the defendants failed to furnish their names as individuals who were *present* at the "mixer." Thus, we are not apprised of the extent if any, that decedent consumed alcohol *during* the party.

ly morning hours of December 12, 1979, was sitting on the bar, matching straight shots from a bottle of whiskey with his fraternity brother, Tom Baatz. After watching this sorry display for some time, another member, Greg Broerman took the bottle from the "contestants" and placed it in a whiskey case behind the bar. Immediately decedent went behind the bar and "pressure[d]" Broerman into returning the bottle and decedent took one final shot of whiskey. Broerman then convinced decedent to stop drinking and with another fraternity brother, assisted decedent into the television room after the "brothers" decided decedent could not be safely taken to his bed because of the risk of negotiating a set of stairs and the difficulty of getting him into his top bunk. A pillow and blanket were obtained and decedent, who frequently spent the night in other rooms of the house, was left to sleep on the television room floor.

At about 10:00 a.m. on December 12, decedent could not be wakened and he was taken to a local hospital where emergency treatment was administered but he could not be revived. In the ensuing autopsy decedent's blood alcohol level measured .43% and the cause of death was determined as "acute alcohol intoxication with aspiration."

Respondents brought this action alleging that both the Local and the National had "negligently and carelessly allowed, permitted and condoned the serving of alcoholic beverages to minors on [fraternity] premises and negligently and carelessly failed to supervise the consumption of alcohol on [fraternity] premises," praying damages of $250,000. The jury returned a verdict against each defendant in the amount of $250,000, reduced to $181,250 on the following apportionment of fault: David Andres—27.5%; National—27.5%; Local—45%. In the Court of Appeals, Western District, the majority reversed the judgment as to both defendants while Kennedy, J. in dissent would have only reversed as to the National and certified the cause in the belief that the majority's opinion stood in conflict with *Carver v. Schafer*, 647 S.W.2d 570 (Mo.App.1983) and *Sampson v. W.F. Enterprises, Inc.*, 611 S.W.2d 333 (Mo.App.1980).

■ Addressing first the Local's liability for furnishing alcoholic beverages to decedent, the legislature, by § 311.310,[5] has proscribed as a misdemeanor the selling, giving or supplying by "[a]ny licensee" or "any person" (with exceptions not relevant here) of "intoxicating liquor" to those under twenty-one years of age. An unincorporated association,[6] may be considered a "person" under § 1.020(10),[7] and because the Local only functions through the acts of its members we conclude that it is a

5. Section 311.310 provides:

   **Sale to minor—certain other persons, misdemeanor—exceptions.**—*Any licensee* under this chapter, or his employee, *who shall sell, vend, give away or otherwise supply any intoxicating liquor in any quantity whatsoever to any person under the age of twenty-one years,* or to any person intoxicated or appearing to be in a state of intoxication, or to a habitual drunkard, *and any person* whomsoever except his or her parent or guardian *who shall procure for, sell, give away or otherwise supply intoxicating liquor to any person under the age of twenty-one years,* or to any intoxicated person or any person appearing to be in a state of intoxication, or to a habitual drunkard, *shall be deemed guilty of a misdemeanor;* provided, however, that this section shall not apply to the supplying of intoxicating liquor to a person under the age of twenty-one years for medical purposes only, or to the administering of said intoxicating liquor to any person by a duly licensed physician. (Emphasis added.)

6. The Local argues that damages for wrongful death may only be recovered in a case in which the deceased party would have been entitled to bring an action for personal injuries had he survived his injuries. That the decedent as a member of this unincorporated association could not have maintained a claim for personal injuries because such an action would have been tantamount to a suit against himself. Thus, the Local concludes that respondents, as decedent's representatives, have failed to state a claim upon which relief can be granted. It is unnecessary for us to reach the merits of this argument as our treatment of the duty question is resolved favorably for the Local. *See Logsdon v. Duncan,* 293 S.W.2d 944, 946 (Mo.1956) ("only those essential questions necessary to a determination of [an] appeal in this court will be considered").

7. Section 1.020 (10) provides the following definition for the term "person" as "used in the statutory laws of this state":

   The word **"person"** *may extend* and be applied to bodies politic and corporate, and to partnerships and other *unincorporated associations.* (Bold face in original. Emphasis added.)

person as that term is employed in § 311.-310 and thus it was unlawful for the Local to provide alcoholic beverages to those under twenty-one years of age who attended the "mixer."

While it was unlawful for the Local to furnish alcoholic beverages to those under age, respondents were required to establish: 1) a civil duty not to furnish decedent with intoxicating liquor; 2) breach of that duty; and 3) the furnishing of alcoholic beverages to decedent was the proximate cause of his death. *See Virginia D. v. Madesco Investment Corp.*, 648 S.W.2d 881, 886 (Mo. banc 1983). In all this it does not necessarily follow that civil liability can be imposed though there may have been a violation of the criminal statute.

The earliest reported Missouri case addressing the problem of furnishing alcoholic beverages and concomitant injury which our research discloses is *Skinner v. Hughes*, 13 Mo. 440, 441 (Mo.1850). There the owners of a store furnished alcoholic beverages to a slave who ultimately died of alcohol poisoning. In 1850 such sale to a slave was prohibited by Chapter 72 § 7, RSMo 1845[8] and this Court concluded the owner of the slave was entitled to recover damages because the proximate cause of the slave's death was the "providing" of the alcoholic beverage. *Skinner*, 13 Mo. at 443. Although, the existence of a duty not to furnish alcohol to the slave was not explicitly discussed, it can be assumed the statutory prohibition must have been considered when establishing such duty.

More recently, the Western District Court of Appeals held that the parents of an individual under twenty-one years of age who was served alcoholic beverages in two taverns and later was killed when his pickup truck overturned, stated a cause of action for wrongful death against the taverns. *Sampson v. W.F. Enterprises, Inc.*, 611 S.W.2d 333, 337 (Mo.App.1981). A duty not to furnish alcoholic beverages to

the decedent was found to exist because the purpose of § 311.310 was viewed as including not only the regulation of the liquor industry but also the protection of those under twenty-one years of age. *Id.* Relying upon its *Sampson* analysis, the Western District in *Nesbitt v. Westport Square, Ltd.*, 624 S.W.2d 519 (Mo.App. 1981), held that a passenger in a car driven by an eighteen year old companion who had been served alcoholic beverages in a tavern could state a cause of action against the tavern for injuries she sustained when the two were involved in an automobile accident.

Consistent with *Sampson* and *Nesbitt* is the decision of the Eastern District Court of Appeals in *Carver v. Schafer*, 647 S.W.2d 570 (Mo.App.1983). The *Carver* plaintiffs were found to have stated a cause of action against a tavern owner for allegedly serving alcoholic beverages to an intoxicated individual who subsequently struck and killed their pedestrian family member. *Id.* at 575. While the Eastern District in *Carver*, unlike the Western District in *Sampson* and *Nesbitt*, relied on the application of general principles of common law negligence rather than a violation of § 311.310 to find the existence of a duty not to serve someone who was allegedly intoxicated, the court did look to § 311.310 as "indicative of Missouri public policy" in making its determination that the tavern owner had a duty not to supply an intoxicated individual. *Id.*

Though the preceding cases all involve *commercial vendors* of liquor by the drink, not *social hosts*, it is argued that by logical extension they support the respondents' position that the Local, a social host, had a duty either pursuant to § 311.310 or the common law not to furnish alcoholic beverages to the decedent. The Local contends, however, that the terms of recently enacted § 537.053[9] (effective September 28,

8.  Chapter 72 § 7, RSMo 1845 provided:
    No grocer or dram-shop keeper shall, directly or indirectly, sell any intoxicating liquor or drink of any kind to any slave, without permission, in writing, from the master, owner, or overseer of such slave.

9.  Section 537.053 provides:
    **Sale of alcoholic beverage not proximate cause of personal injuries or death—exceptions—requirements—(dram shop law).—1.** Since the *repeal of the Missouri Dram Shop Act* in 1934 (Laws of 1933–34, extra session, page 77), it has been and continues to be the

1985) bar any claim which respondents would otherwise be entitled to pursue in as much as § 537.053 explicitly "abrogate[s]" the latter three cases discussed above. It is maintained by the Local that the legislature made a policy choice in § 537.053 that the proximate cause of injuries connected with the providing of alcoholic beverages in *both commercial* and *social settings* is the *consumption* rather than the *furnishing* of the intoxicating substances. Contending that even if it (the Local) owed a duty to decedent, respondents' have failed to state a claim for relief because § 537.053 mandates finding an absence of proximate cause.

Section 537.053.1 provides that "[s]ince the repeal of the Missouri Dram Shop Act in 1934 ... it has been and continues to be the policy of this state ... to prohibit dram shop liability"[10] because the "furnishing [of] alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons." The Local's reliance upon § 537.053.1 is misplaced as the terms of § 537.053.1 are explicitly applicable to dram shops (i.e. commercial vendors) and not to a social host such as the Local. Moreover, our interpretation is bolstered by the reference in § 537.053.1 to the repeal of The Missouri Dram Shop Act which had authorized *civil actions* arising from the illegal selling of intoxicating liquor not the activities of *social hosts. See supra* note 10. When the reference to the repeal of the Missouri Dram Shop Act is viewed in context with the language "to prohibit dram shop liability" we must conclude that the legislature intended only to address the question of liability relating to commercial vendors in § 537.053.1 and particularly those falling in the class described as "dram shop" operators.

Similarly, § 537.053.2 prohibits imposition of liability upon certain commercial vendors by stating that "the holdings in cases such as" *Sampson, Nesbitt* and *Carver*,[11] involving taverns, are to be "abrogat-

---

policy of this state to follow the common law of England, as declared in section 1.010, RSMo, *to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons.*

2. The legislature hereby declares that this section shall be interpreted so that the holdings *in cases such as Carver v. Schafer, 647 S.W.2d 570 (Mo.App.1983); Sampson v. W.F. Enterprises, Inc., 611 S.W.2d 333 (Mo.App. 1980); and Nesbitt v. Westport Square, Ltd., 624 S.W.2d 519 (Mo.App.1981) be abrogated in favor of prior judicial interpretation* finding the consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person.

3. Notwithstanding subsections 1 and 2 of this section, a cause of action may be brought by or on behalf of any person who has suffered personal injury or death *against any person licensed to sell intoxicating liquor by the drink for consumption on the premises* who, pursuant to section 311.310, RSMo, has been convicted, or has received a suspended imposition of the sentence arising from the conviction, of the *sale* of intoxicating liquor to a person under the age of twenty-one years or an obviously intoxicated person if the *sale* of such intoxicating liquor is the proximate cause of the personal injury or death sustained by such person. (Emphasis added.)

10. The Missouri Dram Shop Act, § 4487, RSMo 1929 provided in relevant part:

**Right of action for damages.—**Every wife, husband, child, parent, guardian, or other person in the state of Missouri, who shall be injured in person or property or means of support or otherwise by any intoxicated person by reason of the *selling of intoxicating liquors* in violation of the provisions of this chapter, *shall have the right of action* in his or her name against any person, firm or corporation who shall, by such *illegal selling* of such liquors, have caused or contributed to the intoxication of said person or persons, or who have caused or contributed to any such injury; and in any action given by this section the plaintiff shall have the right to recover actual and exemplary damages. In case of the death of either party, the action or right of action given by this section shall survive to and against his or her executor or administrator....

(Emphasis added.) This Act, as noted in § 537.053.1 was repealed by § 44 of C.S.S.B. 6, 21, 22, 23, 24 and 25. Laws of Missouri Extra Session 1933–34 at 92.

11. Judge Kennedy certified the case at bar because he viewed the decision of the majority as being contrary to the decisions in *Carver v. Schafer*, 647 S.W.2d 570 (Mo.App.1983) and *Sampson v. W.F. Enterprises, Inc.*, 611 S.W.2d 333 (Mo.App.1980). He expressed the view that "there is no difference among tavern keeper, social host and occupier of some intermediate status like [the Local]." We recognize that such reasoning necessarily results in the majority's opinion being viewed as contrary to *Carver* and *Sampson*. Unlike Judge Kennedy, we feel that the facts support finding that the Local was a *social host* and that acknowledging the existence

ed" because the *consuming* rather than the *furnishing* of alcoholic beverages is deemed the proximate cause of injuries inflicted upon others by intoxicated persons, and those cases "abrogated" by § 537.-053.2 dealt with the furnishing of alcoholic beverages by taverns selling liquor by the drink not *social hosts.*[12]

Finally, § 537.053.3 creates exceptions to the rules of non-liability established in § 537.053.1 and § 537.053.2, and provides that a cause of action may, notwithstanding subsections 1 and 2, be stated against *"[a] person licensed to sell intoxicating liquor by the drink for consumption on the premises"* in two specified circumstances. (Emphasis added.) *See supra* note 9. Again, the quoted language demonstrates an intent to address only the liability of a particular class of commercial vendors.

■ While it might be argued § 537.053 should be somehow construed as applying to social hosts in order to achieve the legislative purpose of precluding civil liability for all purveyors of alcoholic beverages, close scrutiny of its subsections reveals no ambiguity which could be construed as demonstrating a legislative intention that permits of such construction. Our responsibility is to "determine the legislative intent from what the legislature said and not from what we think the legislature intended to say or inadvertently failed to say." *Gray v. Wallace,* 319 S.W.2d 582, 585 (Mo. 1958). Having found no ambiguity in § 537.053 which would support a wide ranging construction urged by appellants, we conclude that the legislature only intended to shield a particular class of commercial vendors [13] of alcoholic beverages and not social hosts from civil liability.

■ Were we to assume that through its enactment of § 537.053 the legislature intended to insulate social hosts from civil liability, nevertheless the statute cannot be employed as a device to avoid liability in this instance. The Missouri Constitution, Article I § 13, prohibits the "retrospective" application of laws enacted by the legislature,[14] such a law is one which " 'take[s] away or impair[s] vested rights acquired under existing laws, or create[s] a new obligation, impose[s] a new duty, or *attach[es] a new disability in respect to transactions or considerations already past.*' " *Barbieri v. Morris,* 315 S.W.2d 711, 714 (Mo.1958) (emphasis added)(quoting *Lucas v. Murphy,* 348 Mo. 1078, 1084, 156 S.W.2d 686, 690 (1941)). *See also Willhite v. Rathburn,* 332 Mo. 1208, 1217, 61 S.W.2d 708, 711 (1933) (laws may not be applied retrospectively when they would "affect … past transactions to the *sub-*

---

of an "intermediate status" only injects unnecessary confusion into an ever increasingly complex body of law generally addressing the liability of purveyors of alcoholic beverages. *See,* e.g. Note, *Social Host Liability: Am I My Brother's Keeper?,* 21 New Eng.L.Rev. 351, 392–397 (Appendices A–E) (1985–1986). These comments should in no way be construed as constituting a condemnation of Judge Kennedy's utilization of the certification process since this is not a case of the dissenting judge "certify[ing] a case to us as conflicting simply because he differs with his colleagues about the result." *State v. Alexander,* 706 S.W.2d 21, 25 (Mo. banc 1986)(quoting dissent of Blackmar, J.).

12. Although *Skinner v. Hughes,* 13 Mo. 440 (Mo. 1850) was not explicitly referenced in the statute and though it did not involve injury inflicted upon others by an intoxicated individual, but instead a "property loss" as it was then perceived under the since discredited institution of slavery, we believe that because it also involved a commercial vendor the legislature through the use of the phrase "cases such as," intended that the scope of § 537.053.2 not be limited to those

cases explicitly enumerated and therefore the rationale of *Skinner* likewise would appear to be no longer viable.

13. The most recent definition of a "dramshop keeper," which our research has disclosed, provided:

A dramshop keeper is a person permitted by law, being licensed according to the provisions of this chapter, to sell intoxicating liquors in any quantity, either at retail or in the original package, not exceeding ten gallons. Chapter 52 § 6498, RSMo 1919. We express no opinion as to whether this prior definition of a "dramshop keeper" would foreclose a commercial vendor, who furnishes alcoholic beverages in excess of ten gallons, from invoking the protection afforded by § 537.053.

14. Mo. Const. art. I, § 13 provides:

That no ex post facto law, nor law impairing the obligation of contracts, or *retrospective in its operation,* or making any irrevocable grant of special privileges or immunities, can be enacted. (Emphasis added.)

*stantial prejudice* of parties interested") (emphasis added). Respondents' cause of action accrued with the death of their son on December 12, 1979, their first amended petition was filed December 9, 1981 and the trial had in May of 1985. Section 537.053, *only became effective on September 28, 1985*, more than five years after respondents' claim accrued and more than three years after its filing and it may not constitutionally be given the retrospective application urged by appellants.

The most recent reported decision dealing with the issue of civil liability for the furnishing of alcoholic beverages is *Harriman v. Smith* 697 S.W.2d 219 (Mo.App. 1985). The facts presented in *Harriman* are more closely analogous to those of the case sub judice than any occurring in the cases previously discussed which have been "abrogated" by enactment of § 537.053. Moreover, we find the analysis in *Harriman* compelling and adopt it in the disposition of this cause.

■ The defendants in *Harriman* were social hosts who furnished alcoholic beverages to an individual, under the age for lawful consumption. *Id.* at 220. Plaintiffs were the survivors of an individual who was killed while riding as a passenger in a car driven by that underage consumer. *Id.* The Eastern District Court of Appeals held that plaintiffs failed to state a claim for relief and that neither § 311.310 nor the principles of common law negligence imposed a duty upon the defendants to abstain from furnishing alcoholic beverages to an individual under twenty-one years of age. *Id.* at 221–23. The court opined that imposing liability upon social hosts would have "a substantial impact on … everyday social and family affairs" and therefore the parameters of any duty imposed on social hosts should be determined by the legislature. *Id.* at 221. Moreover, unlike commercial vendors, social hosts do not realize any pecuniary gain from the furnishing of alcoholic beverages and for this reason they likewise have no incentive to encourage excessive consumption. *Id.* In addition, the typical social host lacks the expertise required to evaluate the quantity of alcohol a guest can safely consume. *Id.*

Lastly, commercial vendors are able to insure themselves against the risks of furnishing alcoholic beverages while such protection is not presently available to social hosts. *Id.* Persuaded of the correctness of the holding in *Harriman* we conclude that respondents have failed to state a claim for relief against the Local.

■ We now turn to the respondents' argument that the National was negligent through its failure to adopt a policy which prohibited the furnishing of alcoholic beverages by local chapters to those individuals who are under the lawful age for consumption. The National contends that it did not owe a duty to decedent to promulgate a policy which forbad the serving of alcoholic beverages by local chapters to those members under the age permitted by law.

It would be anomalous to impose a duty on the National to establish a policy *forbidding the furnishing of alcoholic beverages* by local chapters to members under the lawful age for consumption while the Local which *actually furnished alcoholic beverages* to those under twenty-one years in this cause had no civil duty at law to refrain from such practice. The National did not participate in the day-to-day management of its chapters and thus was more remote than the Local from the events surrounding the death of respondents' son. Having found no civil liability on the part of the Local, we must similarly find that the National, an entity even further removed than the Local from the sad events leading to this tragedy, is not civilly liable for failing to establish a policy prohibiting the service of alcoholic beverages by local chapters to those under the age permitted by law.

For the reasons discussed, the judgment of the trial court is reversed and the cause is remanded for entry of judgment in favor of both appellants.

HIGGINS, C.J., and BILLINGS, DONNELLY, WELLIVER and ROBERTSON, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

BLACKMAN, Judge, concurring.

I concur. There are a number of reasons why the plaintiffs should not be allowed to recover on the facts shown by this record. The deceased willingly participated in a drinking party and died as a result of his own indulgence. The plaintiffs' attempt to personalize the national and local fraternity organizations and to indict them as the causative agents in the tragedy are highly artificial and do not mask the fact that the 19 year old decedent simply drank himself to death. I do not believe that the tort system should provide a civil remedy under these circumstances.