Billy McCLURE, et al.,
Plaintiffs/Appellants,

v.

Wilbert McINTOSH, et al.,
Defendants/Respondents.

No. 54391.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 11, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 9, 1989.

Application to Transfer Denied
June 13, 1989.

Martin, Bahn, Malec and Cervantes, Leonard P. Cervantes, St. Louis, for plaintiffs/appellants.

Brown, James & Rabbitt, P.C., Daniel T. Rabbitt, T. Michael Ward, St. Louis, for defendants/respondents.

KAROHL, Judge.

Plaintiffs, Billy and Effie McClure, appeal from orders in favor of Jefferson Arms Corporation granting directed verdict on Count I which was tried on the theory of agency liability and judgment notwithstanding the verdict on Count II which was submitted on the theory of dram shop liability. Richard McClure, the son of Billy and Effie McClure, was killed when struck by an automobile driven by Wilbert McIn-

tosh, an employee of Jefferson Arms. The McClures filed a wrongful death suit against Jefferson Arms and Wilbert McIntosh. A jury returned a verdict against both defendants for $1,000,000. McIntosh did not appeal the judgment against him. The McClures claim the trial court erred in: (1) granting judgment notwithstanding the verdict; (2) excluding the testimony of William McClure, brother of decedent; and, (3) granting the directed verdict on the agency theory. We affirm.

On October 9, 1982, Richard McClure was struck and killed by an automobile driven by Wilbert McIntosh. McIntosh was employed as a maintenance worker by Jefferson Arms. Jefferson Arms is an apartment complex located in downtown St. Louis. On the date of the casualty, McIntosh attended a party permitted or sponsored by Jefferson Arms for employees who installed new boilers at the complex. It was a party to celebrate completion of the work.

The party was held in the basement of Jefferson Arms. The complex operates a lounge. An employee of Jefferson Arms set up a portable bar for the party using liquor from the lounge's storeroom. There was a dispute as to whether Jefferson Arms paid for the alcoholic beverages or if the liquor was paid for through money in an employees' fund. It was undisputed, however, that Jefferson Arms did not charge the employees for alcoholic drinks and generated no financial profit from the party.

McIntosh attended the party for several hours. He consumed several beers while at the party. It is unclear the exact number of beers McIntosh consumed, but several witnesses testified McIntosh fell asleep on a couch during the party. The party ended sometime between 10:00 and 10:30 p.m. After the party, McIntosh and another hotel employee who had also attended the party, Joy Pennebaker, went to a nearby bar and continued drinking. Pennebaker claimed he and McIntosh drank another two or three beers at the bar. McIntosh and Pennebaker left the bar at approximately 11:45 p.m. Pennebaker, who lived in Illinois, needed a ride home and McIntosh agreed to take him home. McIntosh was on Interstate 70 driving Pennebaker home when his car went off the highway onto a pedestrian walkway, struck and killed Richard McClure.

The McClures first claim is there was sufficient evidence to support a claim of dram shop liability against Jefferson Arms and the trial court erred in granting judgment notwithstanding the verdict. The McClures argue that under § 311.310 RSMo 1978, in effect at the time of Richard McClure's death, Jefferson Arms is liable for serving the alcoholic drinks to McIntosh at the party. The statute provided it was a misdemeanor for a liquor licensee to "sell, vend, give away or otherwise supply any intoxicating liquor in any quantity whatsoever to ... any person intoxicated or appearing to be in a state of intoxication...." Section 311.310 RSMo 1978.[1] The McClures claim Jefferson Arms had a common law duty or a duty because of this statute not to furnish alcoholic beverages to McIntosh.

The common law in Missouri after 1981, but prior to enactment of § 537.053 RSMo 1986,[2] held a tavern owner may be liable for serving alcoholic beverages to an intoxicated person or to a minor who subsequent-

---

1. This was a criminal statute from which civil liability was derived. *See, Carver v. Schafer,* 647 S.W.2d 570, 575 (Mo.App.1983). At the time of Richard McClure's death Missouri had no dram shop statute.

2. This statute prohibits dram shop liability in Missouri except for "any person licensed to sell intoxicating liquor by the drink for consumption on the premises who, pursuant to section 311.310, RSMo, has been convicted, or has received a suspended imposition of the sentence arising from the conviction, of the sale of intoxi-

cating liquor to a person under the age of twenty-one years or an obviously intoxicated person...." Section 537.053.3 RSMo 1986. The Supreme Court of Missouri upheld the constitutionality of the statute in *Simpson v. Kilcher,* 749 S.W.2d 386 (Mo. banc 1988). Section 537.-053, however, is inapplicable to this case. The statute became effective September 28, 1985, and the Supreme Court of Missouri has held the statute may not be applied retroactively. *Andres v. Alpha Kappa Lambda Fraternity,* 730 S.W.2d 547, 552–53 (Mo. banc 1987).

ly struck and killed another. *See, Carver v. Schafer,* 647 S.W.2d 570, 572–75 (Mo. App.1983); *Nesbitt v. Westport Square, Ltd.,* 624 S.W.2d 519, 520 (Mo.App.1981); *Sampson v. W.F. Enterprises, Inc.,* 611 S.W.2d 333, 335–37 (Mo.App.1981). However, liability for injuries caused by intoxicated drivers was never extended to social hosts. *See, e.g., Childress v. Sams,* 736 S.W.2d 48, 49–50 (Mo. banc 1987); *Andres v. Alpha Kappa Lambda Fraternity,* 730 S.W.2d 547, 553 (Mo. banc 1987) (relying on *Harriman v. Smith,* 697 S.W.2d 219 (Mo. App.1985)).

In both *Childress,* 736 S.W.2d 48, and *Andres,* 730 S.W.2d 547, the injuries occurred prior to the enactment of § 537.053 RSMo 1986. The Supreme Court refused to extend common law liability for injuries caused by intoxicated persons to social hosts. Here, Jefferson Arms did not sell alcoholic drinks to its employees and was, at most, a social host. Jefferson Arms had no intent to profit from the party. It derived no financial benefit from the party, and had no incentive to encourage employees to drink excessively. Jefferson Arms sponsored a party to reward its employees for completing an extensive and costly maintenance job. No commercial motive is evident. McIntosh attended the party voluntarily and not in the course of his employment duties. Even though Jefferson Arms is licensed to sell alcoholic beverages, it provided free drinks for its employees at the party. The beverages were furnished by a social host not a dram shop keeper.

■ Public policy in Missouri is that it is the consumption and not the furnishing of alcoholic beverages that is the proximate cause of injuries inflicted by intoxicated persons. Section 537.053.1 RSMo 1986. *See also, Spotts v. City of Kansas City,* 728 S.W.2d 242, 249–50 (Mo.App.1987). The Supreme Court of Missouri in *Andres,* 730 S.W.2d at 553, adopted the reasoning of *Harriman v. Smith,* 697 S.W.2d 219 (Mo.App.1985), and found that imposing liability upon social hosts would have a substantial impact upon everyday family and social affairs. *Andres,* 730 S.W.2d at 553. In *Childress,* 736 S.W.2d at 49–50, the

court found that charging a minimal fee for drinks, but not a fee motivated by intent to generate a profit, did not destroy defendant's role as a social host and therefore did not create liability. *Id.*

We have found no Missouri cases contemplating liability of an employer for acts of an employee who becomes intoxicated at a company sponsored party. However, several other states which, like Missouri, have no social host liability, have held there is no cause of action against employers for casualties involving employees leaving company sponsored parties. *See, e.g., Thompson v. Trickle,* 114 Ill.App.3d 930, 70 Ill.Dec. 563, 564–65, 449 N.E.2d 910, 911–12 (1983); *Kuykendall v. Top Notch Laminates, Inc.,* 70 Md.App. 244, 520 A.2d 1115, 1117–18 (1987); *Whittaker v. Jet-Way, Inc.,* 152 Mich.App. 795, 394 N.W.2d 111, 113–14 (1986); *Meany v. Newell,* 367 N.W.2d 472, 474–75 (Minn.1985). *See also, Williams v. United States Fidelity and Guaranty Co.,* 854 F.2d 106, 108–09 (5th Cir.1988) (applying Mississippi law).

■ We find Jefferson Arms was, at most, a social host and the trial court properly granted judgment notwithstanding the verdict on the theory of dram shop liability. The trial court ruled that no common law dram shop liability existed at the time of Richard McClure's death and, therefore, Jefferson Arms was not liable for his death. The court relied on *Spotts v. City of Kansas City,* 728 S.W.2d 242 (Mo.App. 1987), which held that dram shop liability established in *Carver v. Schafer,* 647 S.W. 2d 570 (Mo.App.1983), would not be given retrospective effect. The trial court did not comment on the holdings in *Nesbitt v. Westport Square, Ltd.,* 624 S.W.2d 519 (Mo.App.1981) or *Sampson v. W.F. Enterprises, Inc.,* 611 S.W.2d 333 (Mo.App.1981), which were decided prior to the date of Richard McClure's death. We find that irrespective of the holdings in these cases, which dealt with liability of dram shops, Jefferson Arms did not sell alcoholic beverages to McIntosh for profit. As a social host Jefferson Arms was not liable for Richard McClure's death. We affirm an order for judgment notwithstanding the

verdict if the ruling was proper for any reason, even if the grounds assigned were wrong. *Arthur v. Jablonow,* 665 S.W.2d 364, 365 (Mo.App.1984). Point denied.

■ The second claim relates to plaintiffs' agency theory. It asserts the trial court erred in excluding the testimony of decedent's brother, William McClure. The McClures offered the testimony of William McClure regarding statements made to him after the fact by Susan Moffit, building manager of Jefferson Arms at the time of the casualty. The court prohibited this testimony after finding the McClures had not disclosed the witness, thus violating a discovery request for statements made by any agent or employee of Jefferson Arms. The court acted within its discretion in excluding the testimony.

William McClure went to Jefferson Arms after Richard McClure was killed in an attempt to determine what had happened to his brother. He testified that when he went to Jefferson Arms and asked to speak with McIntosh, "[a] lady came out to me and said that he [McIntosh] wasn't available, that she could help me and her name was Mickey [the building manager]." He testified he then asked her if she knew what happened the night his brother died. Counsel for Jefferson Arms objected at this point, stating that Jefferson Arms submitted interrogatories to the McClures requesting any statements made by any agents or employees of Jefferson Arms about the incident, and that the McClures had denied having any such statements. Counsel for the McClures informed the court that if allowed to testify, William McClure would state the building manager told him: (1) the hotel had a party for its employees; (2) McIntosh got drunk at the party; (3) McIntosh was on duty the evening of the party; and, (4) she asked McIntosh to take Joy Pennebaker, another hotel employee, home from the party. The court found the McClures violated the discovery request and excluded testimony regarding what the building manager may have said to William McClure.

The interrogatory submitted to the McClures read:

"State whether *you or anyone on your behalf* obtained a statement from any agent or employee of defendant Jefferson Arms Corporation concerning said occurrence and, if so:

A. State the name and address of the person who obtained the statement;

B. State whether such statement was oral, written or recorded.

C. If written or recorded, attach a copy of said statement; if oral, state verbatim the contents thereof." (Our emphasis).

The answer given under oath was, "[n]one."

The McClures contend their son, William McClure, was not acting on their behalf when he questioned the building manager and therefore they were not obligated to include Moffitt's statements when answering the interrogatory. We find the scope of the interrogatory included the statements made by Moffitt to William McClure. The McClures did obtain such statement. The interrogatory was directed to identifying a witness, if any, known to plaintiffs with knowledge of such statements. It is knowledge, not agency, which is operative in the discovery process.

The claim also fails on the agency premise. In *Hilmer v. Hezel,* 492 S.W.2d 395 (Mo.App.1973) this court addressed the issue of who may qualify as acting "on behalf of" a party when interrogatories are so phrased. In *Hilmer,* the pertinent interrogatory asked, "[d]id the defendant *or anyone on his behalf* obtain a written statement or recording from plaintiff concerning the facts of the occurrence in question?" (Our emphasis). *Id.* at 396. Although an insurer of the defendant had obtained such a statement, defendant replied, "[n]o" to the interrogatory. Defendant claimed the insurer had not acted on his behalf in obtaining the statement.

The *Hilmer* court stated that straining to determine who acted on behalf of the defendant "is an attempt at gamesmanship, contrary to the principle that the purpose of our rules of discovery is to minimize concealment and surprise in litigation." *Id.* at 396. The court found the defen-

dant's insurer fell within the scope of those "acting on behalf" of defendant and excluded testimony of the insurer since the statements made to the insurer were not answered in the interrogatory.

Here, although William McClure was not a party to the suit, the statements he obtained and conveyed to plaintiffs fell within the scope of the interrogatory. To act on "behalf" of someone is to act for their benefit, support, defense or advantage. BLACK'S LAW DICTIONARY 141 (rev. 5th ed. 1979). William McClure acted for the benefit of his parents. The McClures attempted to use the statements made by Moffitt as evidence of respondeat superior liability of Jefferson Arms. The purpose of the interrogatory was for Jefferson Arms to find out if the McClures were aware of any statements made regarding Richard McClure's death by employees or agents of Jefferson Arms which supported a claim of respondeat superior liability. The McClures withheld their knowledge of a witness who was prepared to testify about statements of the building manager pertaining to whether McIntosh was on duty and acting within the scope of employment by Jefferson Arms at the time of the casualty. These are essential elements of the case and the statements were beneficial to the McClures in establishing liability of Jefferson Arms. Exclusion of this testimony did not preclude the McClures from attempting to establish liability through other evidence.

■ Whether a party is prejudiced by evasive answers to interrogatories so that exclusion of testimony is proper is a matter left to the discretion of the trial court. *Missouri Highway and Transportation Commission v. Pully,* 737 S.W.2d 241, 245–46 (Mo.App.1987); *State Highway Commission of Missouri v. Cool's Tall Tower Restaurant and Marina, Inc.,* 654 S.W.2d 224, 226 (Mo.App.1983). We cannot say the trial court abused its discretion in excluding the testimony.

■ The last issue is whether there was sufficient evidence to submit a claim of respondeat superior liability, particularly, whether the trial court erred in granting a directed verdict on this theory. We find there was no evidence to support an agency claim and the court properly granted a directed verdict on the issue.

The McClures only argument in support of the claim of respondeat superior liability is that some states have imposed liability on employers for injuries to third persons caused by an intoxicated employee. No Missouri cases are cited in support of the claim of respondeat superior liability. As discussed earlier, although some states have imposed liability upon employers several other states which, like Missouri, have rejected social host liability, have refused to recognize liability of employers for injuries caused by employees who become intoxicated at employer parties. *See, e.g., Thompson v. Trickle,* 114 Ill.App.3d 930, 70 Ill.Dec. 563, 564–65, 449 N.E.2d 910, 911–12 (1983); *Kuykendall v. Top Notch Laminates, Inc.,* 70 Md.App. 244, 520 A.2d 1115, 1117–18 (1987); *Whittaker v. Jet-Way, Inc.,* 152 Mich.App. 795, 394 N.W.2d 111, 113–14 (1986); *Meany v. Newell,* 367 N.W.2d 472, 474–75 (Minn.1985). *See also, Williams v. United States Fidelity and Guaranty Co.,* 854 F.2d 106, 108–09 (5th Cir.1988). Because Jefferson Arms acted only as a social host of the party it is not subject to liability.

In addition, the evidence does not support a claim of respondeat superior liability. Susan Moffitt, the building manager, testified McIntosh's job did not require him to be on 24 hour call at Jefferson Arms and he was not on duty the night of the casualty. When asked if she instructed McIntosh to take Pennebaker home from the party, she replied, "[a]bsolutely not." There was no evidence McIntosh was acting within the scope of his employment when he drove Pennebaker home and his car struck Richard McClure. Pennebaker, a witness for Jefferson Arms, indicated McIntosh drove him home as a gesture of friendship and not out of McIntosh's employment duties at Jefferson Arms.

Pennebaker testified it was McIntosh who offered to take him home after the party. Pennebaker stated he and McIntosh left the party at Jefferson Arms sometime

before 11:30 p.m. and went to a nearby bar. Pennebaker testified he and McIntosh drank "two, possibl[y] three" more drinks at the bar. He stated that while they were at the bar, he told McIntosh he had to leave to catch a bus home, and that McIntosh then offered to give him a ride home. When asked if that was the first time that night the subject of McIntosh taking Pennebaker home came up, Pennebaker stated, "[t]hat was the first." McIntosh testified, but declined to answer any questions on constitutional grounds.

An employer may be found vicariously liable for an employee's tort if the employee commits such act while engaged in an activity falling within the scope of employment. *Maryland Casualty Co. v. Huger*, 728 S.W.2d 574, 579 (Mo.App.1987). An act is considered within the scope of employment if it is: (1) something fairly and naturally incident to business, and, (2) done while engaged in the employer's business. *Id.*

When McIntosh drove Pennebaker to Pennebaker's home in Illinois, he was not acting within the scope of his employment. He was not on duty or engaged in any business for Jefferson Arms. McIntosh was not required to attend the party. He agreed to give a co-worker a ride home after a party and there is nothing in the record, except for the precluded testimony of William McClure, which indicates the building manager suggested McIntosh drive Pennebaker home. There is no evidence McIntosh acted within the scope of his employment as a maintenance worker when he drove Pennebaker home. Point denied.

We affirm.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.