**Scott R. STOTTLE, Glenn A. Stottle, and Minnie I. Stottle, Appellants,**

v.

**BROWN GROUP, INC., Respondent.**

**No. 16951.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 11, 1990.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 21, 1990.

Application to Transfer Denied
Feb. 7, 1991.

Daniel L. Moody, Springfield, for appellants.

William W. Francis, Jr., Springfield, for respondent.

CROW, Judge.

Plaintiffs Scott R. Stottle, Glenn A. Stottle and Minnie I. Stottle appeal from a trial court order dismissing with prejudice their petition against defendant Brown Group, Inc., for failure to state a claim upon which relief can be granted.

Slightly paraphrased, Count I of the two-count petition pled: (1) on April 25, 1986, defendant held a meeting of its top management staff—some 20 people—at a resort in Taney County, (2) the meeting was an annual event, (3) all of defendant's employees at the meeting were on duty within the course and scope of their employment by defendant, as they were required to attend the meeting and defendant compensated them and reimbursed their expenses, (4) defendant spent approximately $500 on alcoholic beverages for consumption at the meeting, (5) one of defendant's employees, Faye Gene Flowers, consumed excessive amounts of alcoholic beverages and became obviously intoxicated at the meeting, (6) Flowers left the meeting in an intoxicated condition about 11:45 p.m., and drove his automobile north on highway 65, (7) plaintiff Scott R. Stottle was operating a motorcycle south on the same highway, (8) Flowers allowed his automobile to cross the center line and collide with the motorcycle, causing plaintiff Scott R. Stottle serious, permanent and crippling injuries, and (9) defendant was negligent in the following particulars:

(a) defendant furnished Flowers alcoholic beverages when it knew or should have known he was intoxicated due to excessive consumption of alcoholic beverages at the meeting;

(b) defendant and its management staff failed to supervise the amount of alcoholic beverages consumed at the meeting by Flowers;

(c) defendant had no rules or regulations regarding consumption of alcoholic beverages by its employees at such meetings which would have regulated the consumption of alcoholic beverages by Flowers;

(d) defendant allowed Flowers, who was obviously intoxicated, to drive his automobile when defendant either knew or should have known that Flowers was intoxicated due to his excessive consumption of alcoholic beverages at the meeting; and

(e) defendant had no rules or regulations pertaining to operation of automobiles by its employees after consumption of alcoholic beverages at such meetings.

In the prayer of Count I plaintiff Scott R. Stottle sought compensatory damages "in such sums as are fair and reasonable," together with $3,000,000 punitive damages.

Count II averred plaintiffs Glenn A. Stottle and Minnie I. Stottle are the parents and natural guardians of Scott R. Stottle, who was 17 years old on the date of the collision. In the prayer of Count II plaintiffs Glenn A. Stottle and Minnie I. Stottle sought recovery of medical expenses incurred on their son's behalf, together with damages for the loss of his services.

■ In determining whether the trial court was correct in dismissing plaintiffs' petition we allow the petition its broadest intendment, treat all facts alleged as true, construe the allegations favorably to plaintiffs, and determine whether the averments invoke principles of substantive law.[1] *Shapiro v. Columbia Union National Bank and Trust Co.*, 576 S.W.2d 310, 312[1] (Mo. banc 1978), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979).

■ A case with facts remarkably similar to those alleged in plaintiffs' petition is *McClure v. McIntosh*, 770 S.W.2d 406 (Mo. App.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 367, 107 L.Ed.2d 353 (1989). Neither side cites it. In *McClure* an employer—the owner of an apartment complex—gave a party for its employees who had installed new boilers at the complex. Alcoholic beverages were served at a bar set up by an employee. The evidence conflicted on whether the liquor, which came from a lounge operated by the employer, was supplied free or paid for by money from an employees' fund. It was undisputed, however, that the employer did not charge the employees for drinks and made no profit from the party.

One employee consumed several beers at the party, and when it ended he and a fellow employee went to a bar and continued drinking. Upon leaving the bar the latter employee needed a ride home. The former undertook to drive him there. En route the driver struck and killed a pedestrian.

The Eastern District of this Court rendered an opinion chronicling the evolution of Missouri law on liability of one who supplies liquor to another who injures a third person. The opinion pointed out that liability for injuries caused by intoxicated drivers had never been extended to social hosts. *Id.* at 408. The Eastern District held the employer was, at most, a social host, as it derived no financial benefit from the party and thus had no incentive to encourage the attendees to drink excessively. *Id.* As a social host, the employer was not liable for the pedestrian's death. *Id.*

The Eastern District also ruled that the driver was not acting within the scope of his employment in driving his fellow employee home, hence the employer could not be held liable for the fatality under the doctrine of respondeat superior. *Id.* at 410–11[5].

In declaring a social host is not liable for injuries caused by an intoxicated driver to whom the host has supplied liquor, the Eastern District cited *Childress v. Sams*, 736 S.W.2d 48 (Mo. banc 1987). There a male guest at a party drank an excessive amount of beer supplied by his hosts, after

---

**1.** The statement of facts in defendant's brief contradicts certain facts alleged in plaintiffs' petition. We disregard the contrary facts in defendant's brief, as the motion to dismiss tests the sufficiency of the petition, not evidence, to state a claim for relief. *Shapiro*, 576 S.W.2d at 314–15[2] n. 6.

which he undertook to drive a female guest home. En route he drove into a pole, injuring his passenger. She and her parents sued the hosts. The Supreme Court of Missouri held the hosts were social hosts, not commercial vendors, even though the hosts charged the guests a nominal sum to defray the cost of the beer. *Id.* at 50. Citing *Andres v. Alpha Kappa Lambda Fraternity*, 730 S.W.2d 547 (Mo. banc 1987), the Supreme Court held in *Childress* that no cause of action lay against the hosts for the passenger's injuries. 736 S.W.2d at 49–50[1].

The petition in the instant case contains no allegation that defendant is a commercial vendor.[2] The facts pled in the petition, if true, demonstrate that defendant's role in the meeting of April 25, 1986, was merely that of a social host.

Plaintiffs argue, however, that the courts should recognize a classification of liquor supplier which would include those who are neither commercial vendors nor social hosts. Plaintiffs assert: "An employer which furnishes alcoholic beverages to an obviously intoxicated employee while on duty and within the course and scope of his employment who subsequently injures a third person would be neither a commercial vendor nor a social host and should be included within some 'intermediate status'."

Plaintiffs base this contention on footnote 11 in *Andres*, 730 S.W.2d at 551–52. However, as we read the footnote the Supreme Court of Missouri rejected the notion of an "intermediate status" between commercial vendors and social hosts. The footnote states, "[A]cknowledging the existence of an 'intermediate status' only injects unnecessary confusion into an ever increasingly complex body of law generally addressing the liability of purveyors of alcoholic beverages."

We are constitutionally bound to follow the last controlling decision of the Supreme Court of Missouri. Mo. Const. Art. V, § 2

(1945); *State ex rel. Board of Public Utilities v. Crow*, 592 S.W.2d 285, 288[3] (Mo. App.1979); *Pitts v. Malcolm Bliss Mental Health Center*, 521 S.W.2d 501, 503[1] (Mo. App.1975). Consequently, we must decline plaintiffs' invitation to recognize an "intermediate status" of liquor supplier who is neither a commercial vendor nor social host.

The facts pled in plaintiffs' petition fall squarely within *McClure* and *Childress*. Plaintiffs' petition thus fails to state a claim upon which relief can be granted. The trial court's order dismissing the petition with prejudice is affirmed.

MAUS, P.J., concurs.

SHRUM, J., concurs and files concurring opinion.

PREWITT, J., recused.

SHRUM, Judge, concurring.

I concur. I do so because, as stated in the majority opinion, decisions of the Supreme Court of Missouri control this court. Mo. Const. art. V, § 2 (1945). Inasmuch as this court is so constitutionally bound, *Andres v. Alpha Kappa Lambda Fraternity*, 730 S.W.2d 547, 551–52, n. 11 (Mo. banc 1987) (emphasis added), compels concurrence because of the following language:

> [A]cknowledging the existence of an "intermediate status" only injects unnecessary confusion into an ever increasingly complex body of law generally addressing the liability of purveyors of alcoholic beverages.

The statement about "intermediate status" by our Supreme Court is found after it had already determined that the "facts support [a] finding that the Local was a *social host.*" *Id.* at 551–52, n. 11 (emphasis in original). The "intermediate status" seemingly rejected in *Andres* appears to be a recognition by the Supreme Court that fact situations might arise where the purveyor of the alcoholic beverages was neither a "social host" nor a commercial vendor.

---

2. Liability may be imposed on commercial vendors of intoxicating liquor in certain instances per § 537.053.3, RSMo 1986, which took effect September 28, 1985. The most recent decision of the Supreme Court of Missouri addressing that statute and the liability of a commercial vendor is *Simpson v. Kilcher*, 749 S.W.2d 386 (Mo. banc 1988).

Yet, if the "intermediate status" is rejected for all factual situations, there is no need to make a distinction between the two.

The terms of § 537.053.1, RSMo 1986, are explicitly applicable to dram shops (i.e., commercial vendors) and not to a social host. *Andres, supra,* at 551. In *McClure v. McIntosh,* 770 S.W.2d 406, 408 (Mo.App. 1989), — U.S. —, 110 S.Ct. 367, 107 L.Ed.2d 353 (1989), § 537.053.1 was cited, in part, as authority for holding that "[p]ublic policy in Missouri is that it is the consumption and not the furnishing of alcoholic beverages that is the proximate cause of injuries inflicted by intoxicated persons." In the instant case, Brown Group, Inc., makes that same argument in its brief. However, the statement in *McClure* about public policy and the argument made by Brown Group, Inc., in its brief is contrary to what the Missouri Supreme Court said about the legislature's intent in adopting § 537.053.

[W]e must conclude that the legislature *intended only* to address the question of liability relating to *commercial vendors in § 537.053.1....*

Similarly, § 537.053.2 prohibits imposition of liability upon certain commercial vendors by stating that "the holdings in cases such as" *Sampson* [*v. W.F. Enterprises, Inc.,* 611 S.W.2d 333 (Mo.App. 1980)], *Nesbitt* [*v. Westport Square, Ltd.,* 624 S.W.2d 519 (Mo.App.1981)] and *Carver* [*v. Schafer,* 647 S.W.2d 570 (Mo. App.1983)], involving taverns, are to be "abrogated" because the *consuming* rather than the *furnishing* of alcoholic beverages is deemed the proximate cause of injuries inflicted upon others by intoxicated persons, and those cases "abrogated" by § 537.053.2 dealt with the furnishing of alcoholic beverages by taverns selling liquor by the drink not *social guests.*

Finally, § 537.053.3 ... demonstrates an intent [by the legislature] to address only the liability of a particular class of commercial vendors.

While it might be argued § 537.053 should be somehow construed as applying to social hosts in order to achieve the legislative purpose of precluding civil liability for all purveyors of alcoholic beverages, *close scrutiny of its subsections reveals no ambiguity which could be construed as demonstrating a legislative intention that permits of such construction.... [W]e conclude that the legislature only intended to shield a particular class of commercial vendors of alcoholic beverages and not social hosts from civil liability.* (Emphasis added.)

*Andres,* at 551–52. Given the above, § 537.053 would not appear to be authority for the proposition that the legislature intended, by such enactment, to extend the public policy described in that legislation to social hosts (or to the "intermediate status" purveyor of alcoholic beverages if any such factual situations existed).

What is clear, is that our Supreme Court relied heavily upon the reasoning in *Harriman v. Smith,* 697 S.W.2d 219 (Mo.App. 1985), in determining that the plaintiffs in *Andres* did not state a claim for relief against the defendant fraternity. The reasons for declining to impose liability on a social host were: (a) Imposing liability upon social hosts would have a substantial impact on everyday social and family affairs and, therefore, the parameters of any duty imposed on social hosts should be determined by the legislature; (b) Unlike commercial vendors, social hosts do not realize any pecuniary gain from the furnishing of alcoholic beverages and, for this reason, they likewise have no incentive to encourage excessive consumption; (c) The typical social host lacks the expertise required to evaluate the quantity of alcohol a guest can safely consume; and (d) Lastly, commercial vendors are able to insure themselves against the risks of furnishing alcoholic beverages while such protection is not presently available to social hosts. *Andres, supra,* at 553; *Harriman, supra,* at 221.

It does not appear that any one of the reasons cited in *Andres* and *Harriman* are a sound basis for holding that no duty could be imposed on an employer, such as Brown Group, Inc., when it is alleged that (a) one of Brown Group, Inc.'s employees

seriously injured an innocent party by driving across the centerline of a highway when the employee was drunk; (b) the employee got drunk at a meeting which Brown Group, Inc., required the employee to attend; (c) Brown Group, Inc., furnished the alcohol and its employee got obviously intoxicated at the meeting; and (d) the employee was on duty and within the course of his employment when he got drunk.

Despite these observations, *Andres* says that there is no "intermediate status" between commercial vendors and social hosts. That being the law, as presently declared, I concur.