**William HARRIMAN, Appellant,**

v.

**Frank S. SMITH, et al., Respondents.**

**No. 48357.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 28, 1985.

Motion for Rehearing and/or Transfer
Denied Aug. 28, 1985.

Application to Transfer Denied
Oct. 16, 1985.

Devereaux & Stokes, P.C., Michael D. Stokes, St. Louis, for appellant.

Sullivan & Watkins, Inc., Hiram W. Watkins, Clayton, for respondents.

SIMON, Presiding Judge.

Frank Smith, Margaret Smith, and Chris Smith, respondents herein, filed an amended motion to dismiss the amended petition of William Harriman, appellant, on the grounds that: (1) no claim for relief exists in Missouri entitling appellant to recover under a social host "dramshop" theory; (2) a judgment in a prior lawsuit with its subsequent acknowledgment and satisfaction of judgment barred appellant's cause of action; and (3) no authority supports appellant's claim for punitive damages in a wrongful death action. Based on respondents' motion, the trial court dismissed Harriman's amended petition with prejudice. Harriman appeals the court's dismissal. We affirm.

John Harriman, appellant's son, was killed in an automobile collision while he was a passenger in a car driven by Paul Morard, a minor. Appellant filed a two count wrongful death action against the respondents alleging, in pertinent paragraphs, in Count I: (1) respondents' actions of causing, allowing, and permitting alcohol to be served to obviously intoxicated persons and minor persons, which categories included Morard, were negligent and the direct and proximate cause of the collision; (2) respondents had a history of such activities in permitting alcoholic beverages to be served to minors and that minors living in the neighborhood and area were aware of these activities; and (3) respondents negligently, in violation of § 311.310 RSMo 1978, caused, allowed, and permitted alcoholic beverages to be served to minors, including Morard, and that these violations directly caused the death of appellant's son. In Count II, appellant sought punitive damages, alleging that respondents' actions were willful, wanton, malicious, and in conscious disregard of the safety of his son.

Prior to the commencement of this lawsuit, appellant and his wife Margaret Harriman had filed a wrongful death action arising out of the same automobile collision against Morard, the driver of the automobile. A settlement was entered in the action against Morard in the amount of $25,000.00; pursuant to § 537.095 RSMo 1978, the court entered a judgment memorandum for damages. Appellant and Margaret Harriman then executed an acknowledgment and satisfaction of judgment for the damages awarded pursuant to § 537.095 RSMo 1978. (All further references shall be to RSMo 1978 unless otherwise indicated.)

Appellant's first point raises error in the trial court's dismissal of his petition for failure to state a claim for relief. He contends his petition stated a claim for relief based upon: (1) a theory of common law negligence by his allegations that respondents negligently permitted intoxicating liquor to be served to an obviously intoxicated minor whose intoxicated condition caused injury to appellant's son, and (2) a theory of actionable negligence by his allegation that respondents violated § 311.310 in permitting intoxicating liquor to be served to a minor.

In reviewing the trial court's dismissal of appellant's petition for failure to state a claim upon which relief can be granted, the sole issue to be decided is whether, after giving the pleading its broadest intendment, treating all facts alleged as true, and construing all allegations favorably to plaintiffs, the averments invoke principles of substantive law entitling appellant to relief. *Lowrey v. Horvath*, 689 S.W.2d 625 (Mo.banc 1985).

At the onset, we note that appellant's argument for imposition of liability upon a social host for serving alcohol to an intoxicated guest who subsequently injures a third party presents a case of first impression in Missouri. Neither appellant nor our research has disclosed any Missouri cases directly on point.

Appellant seeks to extend the holding in *Carver v. Schafer*, 647 S.W.2d 570 (Mo. App.1983) to include social hosts. In *Carver*, this court held that a common law negligence action exists against a tavern owner for negligently serving liquor to an intoxicated person who subsequently causes injury to a third person. 647

S.W.2d at 575. Appellant argues that the same rationale underlying our holding in *Carver* applies to the liability of a social host who serves alcohol to a guest in his home. We disagree.

*Carver* made clear that this court was not precluded from changing the common law doctrine shielding vendors from liability. At common law, no cause of action existed against one who furnished, by sale or gift, intoxicating liquor to a person who became voluntarily intoxicated and consequently injured another. *Id.* at 572. The notion was at common law that the consumption of the alcohol, and not its furnishing, was the proximate cause of an injury. *Id.* Becaue Missouri had no dramshop act, unlike some of its sister states, this court recognized that tort law issues under certain circumstances are proper aspects for judicial reform. *Id.* at 573. In so doing, we were aware in *Carver* of numerous other states which had considered the issue of a tavern owner's negligence in serving liquor to a visibly intoxicated patron and recognized common law negligence actions under similar facts. *Id.* at 572 n. 1. Since our legislature had not responded to a compelling issue by enacting a dramshop act, this court was constrained in *Carver* to fashion a remedy to correct the injustices being visited upon an innocent victim. In so doing, we acknowledged that additional arguments, notwithstanding public policy, might weigh in favor of not imposing liability on "the host of a social gathering." *Id.* at 574.

To accept appellant's view would place upon a social host a duty owed business invitees. As a social guest, appellant's son occupied the status of a licensee, not a business invitee. *Wells v. Goforth*, 443 S.W.2d 155, 156 (Mo.banc 1969). The operator of a place of a public resort, such as a tavern owner, has a higher duty of care. Guests, that is customers of a tavern owner, are business invitees. *See Gregorc v. Londoff Cocktail Lounge*, 314 S.W.2d 704, 707[5–7] (Mo.1958).

While differences between invitees, licensees, and trespassers with respect to the duty owed them by the possessor of land largely disappears once the presence of the visitor is known and a uniform duty, that of reasonable care, is owed to each as to the activities on the premises, *Penberthy v. Penberthy*, 505 S.W.2d 122, 126[1] (Mo. App.1973), distinctions based on status still remain. *See* Restatement (Second) of Torts §§ 341, 341A; W. Prosser and W. Keeton, *Prosser and Keeton on the Law of Torts* §§ 60, 61 (5th Ed.1984).

The rationale underlying the imposition of liability on a business dispenser of liquor substantially differs from imposition of liability on a non-business dispenser, the social host. Tavern owners, and other similarly situated business dispensers, realize a profit from dispensing alcoholic beverages to the public who frequent their place of business. They also insure against risk of loss as a cost of doing business. In contrast, the social host generally realizes no pecuniary gain from serving alcoholic beverages to a guest. Additionally, a tavern owner profits from his patrons' individual capacities to consume alcoholic beverages. The social host derives no particular benefit from the amount of alcoholic beverage consumed.

Another distinction between licensed vendors and social hosts is based on the governmental interest which supports the statutory requirement that business vendors of alcohol be licensed. The element of control exercised by a licensed vendor concomitant with his expertise in determining intoxication is vastly superior to the social host's control and expertise.

There is, and should be, a legitimate concern for the problem of drunken driving but the extension of liability to a social host opens the door to areas of the law yet unexplored having a substantial impact on a person's everyday social and family affairs. We recognize that under this fact pattern, principles of common law negligence could be extended to impose a duty on the social host. At this time, however, we conclude that the legislature should be the determinant of any such duty and its parameters. The legislature is better

equipped to deal with myriad considerations. The political machinery of the legislature has the requisite sophisticated tools for gathering data, conducting studies, receiving public opinion, and, finally, implementing the policy in carefully expressed and well-defined legislation. The difficulties in: (1) classifications of business vendors and social hosts; (2) recognition of intoxication; (3) predictability of the conduct of an intoxicated person; (4) imposition of a duty of inquiry upon social hosts; and (5) the spread of the cost of liability are additional arguments persuading us to defer decisionmaking to the legislature.

We are not unmindful that two other jurisdictions have seen fit to extend common law liability to social hosts. *Kelly v. Gwinnell*, 96 N.J. 538, 476 A.2d 1219 (1984); *Koback v. Crook*, 123 Wis.2d 259, 366 N.W.2d 857 (1985). *See* Comment, "Social Host Liability and Missouri Tort Law," 29 St. Louis U.L.J. 509 (1985) for discussion of other jurisdictions' resolution of this issue. In passing we note that the legislature recently enacted and the governor signed Senate Bill No. 345 which provides in pertinent part as follows:

2. The legislature hereby declares that this section (§ 1.010 RSMo.1978 which states the policy of Missouri is to follow the common law of England) shall be interpreted so that the holdings in cases such as *Carver v. Schafer*, 647 S.W.2d 570 (Mo.App.1983); *Sampson v. W.F. Enterprises, Inc.*, 611 S.W.2d 333 (Mo.App.1980); and *Nesbitt v. Westport Square, Ltd.*, 624 S.W.2d 519 (Mo.App. 1981) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person.

3. Notwithstanding subsections 1 and 2 of this section, a cause of action may be brought by or on behalf of any person who has suffered personal injury or death against any person licensed to sell intoxicating liquor by the drink for consumption on the premises who, pursuant to section 311.310, RSMo, has been convicted, or has received a suspended imposition of the sentence arising from the conviction, of the sale of intoxicating liquor to a person under the age of twenty-one years or an obviously intoxicated person if the sale of such intoxicating liquor is the proximate cause of the personal injury or death sustained by such person.

This legislative response to *Carver* is very informative.

We are well aware of the sorrow and devastation caused by drunken drivers, especially youthful offenders but our deference to the legislature should not be interpreted as an avoidance of our duty. On the contrary, our restraint is exercised with the recognition and understanding of the principles of the distribution of powers as set forth in Article II, Section 1 of our Constitution. *See also* Mo. Const. Art. I, § 1. Based on the paucity of data in the record before us, we are unable to reasonably measure the widespread repercussions from extending "dramshop" liability to the social host, thus compelling our conclusion that a legislative response rather than a judicial response is the more appropriate answer under these circumstances.

As an alternative to imposing liability based on the common law, appellant would predicate liability on § 311.310 RSMo 1978. Section 311.310 reads as follows:

Any licensee under this chapter, or his employee, who shall sell, vend, give away or otherwise supply any intoxicating liquor in any quantity whatsoever to any person under the age of twenty-one years, or to any person intoxicated or appearing to be in a state of intoxication, or to a habitual drunkard, and any person whomsoever except his or her parent or guardian who shall procure for, sell, give away or otherwise supply intoxicating liquor to any person under the age of twenty-one years, or to any intoxicated person or any person appearing to be in a state of intoxication, or to a habitual drunkard, shall be deemed guilty of a

misdemeanor; provided, however, that this section shall not apply to the supplying of intoxicating liquor to a person under the age of twenty-one years for medical purposes only, or to the administering of said intoxicating liquor to any person by a duly licensed physician.

The appellant correctly points out that in *State v. Patton,* 336 S.W.2d 726 (Mo.App.1960), a person (other than a licensee) was criminally liable for giving alcohol to minors. There have also been cases where a tavern owner was held civilly liable for serving a minor in violation of § 311.310. *Nesbitt v. Westport Square, Ltd.,* 624 S.W.2d 519 (Mo.App.1981); *Sampson v. W.F. Enterprises, Inc.,* 611 S.W.2d 333 (Mo.App.1980). We recognize that a civil claim for relief may be based upon a criminal statute if the person injured by the violation of the statute is a member of the class the statute was enacted to protect, and if the purpose of the statute is to protect or promote public safety. *Moore v. Riley,* 487 S.W.2d 555[1] (Mo. 1972); *Williams v. Nuckolls,* 644 S.W.2d 670, 673 (Mo.App.1982). However, we have not been directed to, and our research has failed to uncover, any cases where a civil action under § 311.310 has been maintained against a non-business dispenser.

In looking at the general scheme of The Liquor Control Law under which § 311.310 falls, the obvious intent of the legislature is the control of liquor licensees in the dispensing and sale of alcohol. In the context of the entire act and its stated purposes, the apparent intention is to regulate the commercial sale of liquor, not its use in a social setting. When construing a statute, we look at the general statutory scheme, and do not single out a section and apply it in a vacuum. Section 311.310 is broken into two distinct parts: one dealing with liquor licensees; the other, with "any person." Although in *Sampson v. W.F. Enterprises, Inc.,* the court relied upon § 311.310 to impose civil liability on tavern owners, 611 S.W.2d at 337, nothing indicates the extension of civil liability to a social host who would be within the second part of the statute.

Furthermore, legislative failure to define and expound on the duties of non-business dispensers under the Liquor Control Law is indicative of its intent that they not be held civilly liable under § 311.310. If liability is to be imposed upon a social host, statutory guidelines governing the social host's standard of care should be set forth, as are the explicit guidelines governing liquor licensees. For example, § 311.328 provides a defense for any "licensee or the servant, agent or employee thereof" to a charge of serving alcoholic beverages to a minor. Nowhere is a social host or "any person" mentioned. Section 311.328 clearly applies only to liquor licensees. Therefore, we conclude the statutory language in § 311.-310 does not provide a civil claim for relief against social hosts.

Our resolution of point one is dispositive of this appeal. Therefore, we need not address the other points raised.

Judgment affirmed.

STEPHAN, J., and STEWART, Senior J., concur.