Tafi Luan **COONS, Appellant,**

v.

**Devin L. BERRY, et al., Respondents.**

No. WD 70080.

Missouri Court of Appeals, Western District.

Dec. 22, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 2010.

Application for Transfer Denied March 23, 2010.

---

Michael P. Healy, for Appellant.

Gregory P. Robinson, for Respondent.

Before Division Two: VICTOR C. HOWARD, Presiding Judge, JOSEPH M. ELLIS, Judge and MARK D. PFEIFFER, Judge.

JOSEPH M. ELLIS, Judge.

Tafi Coons appeals from the trial court's dismissal of her wrongful death action against Devin Berry. Finding no error, we affirm.

On January 13, 2001, Ms. Coons's daughter, Litia Calloway, died from an alcohol overdose after she attended a party held at Mr. Berry's residence. Ms. Calloway was 18–years–old at the time of her death.[1] On January 7, 2004, Ms. Coons filed a wrongful death claim against Mr. Berry and eight other defendants, claiming the defendants were negligent as social hosts for offering, providing, and encouraging Ms. Calloway to consume alcohol at the party.[2] Ms. Coons further claimed that Mr. Berry, Charles Maley, and Melvin Roebuck were negligent as owners and occupiers of the property where the party was held. Finally, Ms. Coons claimed the male defendants assaulted Ms. Calloway.

Mr. Berry filed a motion to dismiss, and on April 6, 2005, the trial court issued an interlocutory order granting Mr. Berry's motion in regard to the social host liability claim. Thereafter, Ms. Coons voluntarily dismissed the remaining claims against the defendants, and on April 25, 2008, the trial court entered a final judgment dismissing Ms. Coons's social host liability claim. Ms. Coons now appeals the trial court's judgment.

We review a trial court's decision to grant a motion to dismiss de novo. *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008). When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, we apply the following standard of review:

A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.

*State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 329 (Mo. banc 2009) (internal quotation omitted). In order to avoid dismissal, the petition must invoke "substantive principles of law entitling plaintiff to relief and

---

1. In her petition, Ms. Coons listed Ms. Calloway's date of birth as October 19, 1982, making her 18–years–old at the time of her death. However, Ms. Coons's brief refers to Ms. Calloway as being 17–years–old at the time of her death.

2. Although Ms. Coons contended in her petition that the defendants pressured Ms. Calloway into drinking, she states in her appellate brief that allegations relating to that claim "are not presented in the statement of facts herein, because the only surviving witnesses were defendants and their deposition testimony denied such pressure."

... ultimate facts informing the defendant of that which plaintiff will attempt to establish at trial." *Id.* at 329–30 (internal quotation omitted).

Ms. Coons asks this court to utilize a statute enacted by the legislature in 2005 to find that her petition states a viable social host liability claim for relief, notwithstanding the fact that the statute in question, § 311.310.2,[3] did not take effect until September 15, 2005, some four and a half years after Ms. Calloway's tragic death. To fully understand Ms. Coons's argument on appeal, a bit of historical background is necessary.

> At common law, no cause of action existed against one who furnished, by sale or gift, intoxicating liquor to a person who became voluntarily intoxicated and consequently injured another. The notion was at common law that the consumption of the alcohol, and not its furnishing, was the proximate cause of an injury.

*Harriman v. Smith,* 697 S.W.2d 219, 221 (Mo.App. E.D.1985) (citation omitted). In 1981, however, this court held that the parents of a person under twenty-one years of age who was killed when his pickup truck overturned could pursue a wrongful death action against two taverns that had served the decedent alcoholic beverages shortly before the accident. *Sampson v. W.F. Enters., Inc.,* 611 S.W.2d 333, 337 (Mo.App. W.D.1980).[4] The *Sampson* court found a duty based on § 311.310, RSMo 1978, which generally makes it a misdemeanor for "[a]ny licensee" or "any person" to sell, give or supply "intoxicating liquor" to anyone under twenty-one years of age, because the statute was intended not only to regulate the liquor industry,

but also to protect those under twenty-one years of age. *Id.* at 335–37 Not long thereafter, this court relied on the reasoning in *Sampson* to hold that a passenger in a car being driven by an eighteen-year-old could state a cause of action against a tavern that had served alcoholic beverages to the driver prior to the driver and passenger being injured in an accident. *Nesbitt v. Westport Square, Ltd.,* 624 S.W.2d 519, 519–20 (Mo.App. W.D.1981).[5]

In 1983, the Eastern District of the Court of Appeals expanded on this trend in *Carver v. Schafer,* 647 S.W.2d 570 (Mo. App. E.D.1983).[6] *Carver* was a wrongful death action against tavern owners where the decedent was a pedestrian standing on the shoulder of the road when he was struck and killed by an alleged drunken driver. *Id.* at 572. The petition alleged that the driver was intoxicated at the time of the accident and that, just prior to the accident, the driver had patronized two taverns that served him intoxicating liquor "that lead to the intoxication of Shafer or added to his previously existing state of intoxication." *Id.* Unlike *Sampson* and *Nesbitt,* the *Carver* court "relied on the application of general principles of common law negligence rather than a violation of § 311.310 to find the existence of a duty not to serve someone who was allegedly intoxicated." *Andres v. Alpha Kappa Lambda Fraternity,* 730 S.W.2d 547, 550 (Mo. banc 1987). Still, "the court did look to § 311.310 as 'indicative of Missouri public policy' in making its determination that the tavern owner had a duty not to supply an intoxicated individual." *Id.*

After this trilogy, the next case addressing the issue of civil liability for the fur-

---

3. All statutory references are to RSMo 2005, unless otherwise indicated.

4. *See infra* note 7.

5. *See infra* note 7.

6. *See infra* note 7.

nishing of alcoholic beverages was *Harriman v. Smith*, 697 S.W.2d 219 (Mo.App. E.D.1985). In that case, the plaintiff's son was a passenger in an automobile operated by Paul Morard, a minor who was allegedly intoxicated at the time of the accident. *Id.* at 220. The defendants were social hosts who allegedly furnished alcoholic beverages to Morard, who the petition alleged was "obviously intoxicated" and a minor, shortly before the accident. *Id.* The trial court dismissed the action, and the plaintiff father appealed. *Id.*

On appeal, plaintiff argued, *inter alia,* that the petition stated a claim for relief based on (1) a theory of common law negligence by permitting "intoxicating liquor to be served to an obviously intoxicated minor whose intoxicated condition caused injury to appellant's son, and (2) a theory of actionable negligence by his allegation that respondents violated § 311.310, RSMo 1978, in permitting intoxicating liquor to be served to a minor." *Id.* In analyzing the issue, the court observed that the plaintiff was asking that the *Carver* holding be extended to social hosts. *Id.* The court noted that such an extension would place "upon a social host a duty owed business invitees," recognizing that there is a significant distinction between social guests, who occupy the status of licensee, and business invitees. *Id.* at 221. Notably different, commercial vendors of alcohol insure against the risk of loss as a cost of doing business and profit from their "patrons" individual capacities to consume alcoholic beverages, while a social host derives no similar benefit. *Id.* The court further pointed out that government has a legitimate interest in licensing business vendors of alcohol, and "[t]he element of control exercised by a licensed vendor concomitant with his expertise in determining intoxication is vastly superior to the social host's control and expertise." *Id.* Ultimately, the court concluded that the legis-

lature should determine any duty to be owed by a social host and its parameters and, therefore, declined to find a common law duty. *Id.*

The *Harriman* court also addressed the alternative argument that liability could be predicated on § 311.310, RSMo 1978, as was done in *Sampson* and *Nesbitt.* The court stated:

> We recognize that a civil claim for relief may be based upon a criminal statute if the person injured by the violation of the statute is a member of the class the statute was enacted to protect, and if the purpose of the statute is to protect or promote public safety. However, we have not been directed to, and our research has failed to uncover, any cases where a civil action under § 311.310 has been maintained against a non-business dispenser.

> In looking at the general scheme of The Liquor Control Law under which § 311.310 falls, the obvious intent of the legislature is the control of liquor licensees ... [and] the apparent intention is to regulate the commercial sale of liquor, not its use in a social setting.... Section 311.310 is broken into two distinct parts: one dealing with liquor licensees; the other, with "any person." Although in *Sampson v. W.F. Enterprises, Inc.,* the court relied upon § 311.310 to impose civil liability on tavern owners, nothing indicates the extension of civil liability to a social host who would be within the second part of the statute.

> Furthermore, legislative failure to define and expound on the duties of non-business dispensers under the Liquor Control Law is indicative of its intent that they not be held civilly liable under § 311.310. If liability is to be imposed upon a social host, statutory guidelines governing the social host's standard of

care should be set forth.... Therefore, we conclude the statutory language in § 311.310 does not provide a civil claim for relief against social hosts.

*Id.* at 223 (internal citations omitted). Accordingly, the court affirmed the trial court's dismissal of the petition.

*Harriman* was handed down on June 28, 1985. In the 1985 legislative session that ended in May of that year, the legislature directly responded to *Sampson, Nesbitt* and *Carver* by enacting § 537.053, RSMo Cum Supp.1985. The *Harriman* court referenced the enactment and found the response "very informative." *Harriman,* 697 S.W.2d at 222. In refusing to find a common law duty on social hosts, the court deferred to the legislature, even though § 537.053, RSMo Cum Supp.1985, had not yet taken effect, to "be the determinant of any such duty." *Id.* at 221.

Section 537.053, RSMo Cum Supp.1985, provides:

1. Since the repeal of the Missouri Dram Shop Act in 1934 (Laws of 1933–34, extra session, page 77), it has been and continues to be the policy of this state to follow the common law of England, as declared in section 1.010, RSMo, to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons.

2. The legislature hereby declares that this section shall be interpreted so that the holdings in cases such as *Carver v. Schafer,* 647 S.W.2d 570 (Mo.App.1983); *Sampson v. W.F. Enterprises, Inc.,* 611 S.W.2d 333 (Mo.App.1980); and *Nesbitt v. Westport Square, Ltd.,* 624 S.W.2d 519 (Mo.App.1981) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person.

3. Notwithstanding subsections 1 and 2 of this section, a cause of action may be brought by or on behalf of any person who has suffered personal injury or death against any person licensed to sell intoxicating liquor by the drink for consumption on the premises who, pursuant to section 311.310, RSMo, has been convicted, or has received a suspended imposition of the sentence arising from the conviction, of the sale of intoxicating liquor to a person under the age of twenty-one years or an obviously intoxicated person if the sale of such intoxicating liquor is the proximate cause of the personal injury or death sustained by such person.

(Emphasis added.)

Two years after the statute was enacted, the Supreme Court of Missouri was called upon to address the meaning and application of § 537.053, RSMo Cum Supp.1985, in *Andres v. Alpha Kappa Lambda Fraternity,* 730 S.W.2d 547 (Mo. banc 1987). In *Andres,* the parents of a young man who died of self-induced alcohol poisoning after a fraternity party brought a wrongful death action against the fraternity. *Id.* at 549. The parents argued that, although *Sampson, Nesbitt,* and *Carver* all involved commercial vendors of alcoholic beverages, the same reasoning should apply to extend a duty to a social host not to furnish alcoholic beverages to the decedent. *Id.* at 550. The fraternity countered that § 537.053, RSMo Cum Supp.1985, abrogated those cases and barred any claim the parents might otherwise have had. *Id.* at 550–51. The fraternity further argued that "the legislature made a policy choice in § 537.053 that the proximate cause of injuries connected with the providing of alcoholic beverages in *both commercial* and *social settings* is the *consumption* rather than the *furnishing* of the intoxicat-

ing substances," *Id.* at 551, and therefore even if the fraternity owed a duty, § 537.053, RSMo Cum. Supp.1985, compels finding an absence of proximate cause. *Id.*

Our Supreme Court rejected the fraternity's argument. It expressly found that § 537.053, RSMo Cum. Supp.1985, was clear and unambiguous and that the statute applied only to commercial vendors and not social hosts. *Id.* The Court concluded "that the legislature only intended to shield a particular class of commercial vendors of alcoholic beverages and not social hosts from civil liability." *Id.* at 552.

Having found that § 537.053, RSMo Cum Supp.1985, did not protect social hosts from liability, the Court went on to address whether the social host fraternity could be held liable. The Court noted that *Harriman* was the most recent case "dealing with the issue of civil liability for the furnishing of alcoholic beverages." *Andres*, 730 S.W.2d at 553. The Court found the "analysis in *Harriman* compelling and adopt[ed] it in the disposition" of the *Andres* case. *Id.* The Court stated: "Persuaded of the correctness of the holding in *Harriman*, we conclude that respondents have failed to state a claim for relief against the [fraternity]." *Id.*

This was the state of the law at the time of Ms. Calloway's death on January 13, 2001.[7] The most recent appellate pronouncement on the subject of social host

7. In *Kilmer v. Mun*, 17 S.W.3d 545, 554 (Mo. banc 2000), the Missouri Supreme Court held that the requirement in § 537.053.3 that a dram shop claim could only be made if the person licensed to sell intoxicating liquor by the drink for consumption on the premises had been convicted for violation of § 311.310 was arbitrary and unreasonable and violated art. I, § 14, the "open courts" provision of the Missouri Constitution. *Kilmer* is not implicated in the instant case because it applies only to persons "licensed to sell intoxicating liquor by the drink for consumption on the premises." *Snodgras v. Martin & Bayley, Inc.*, 204 S.W.3d 638, 640 (Mo. banc 2006). In 2002, the legislature extensively amended § 537.053 generally to conform to the Supreme Court's decision in *Kilmer*. In particular, the amendment deleted entirely subsection 2 of the prior statute, which provided as follows:

2. The legislature hereby declares that this section shall be interpreted so that the holdings in cases such as *Carver v. Schafer*, 647 S.W.2d 570 (Mo.App.1983); *Sampson v. W.F. Enterprises, Inc.*, 611 S.W.2d 333 (Mo. App.1980); and *Nesbitt v. Westport Square, Ltd.*, 624 S.W.2d 519 (Mo.App.1981) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person.

Thus, by deleting the foregoing subsection, the 2002 amendment removed or rescinded the statutory abrogation of the holdings in *Sampson, Nesbitt* and *Carver*. Therefore, the holdings in those cases were restored to the precedential benefit and value they enjoyed prior to the 1985 enactment of § 537.053, but subject, of course, to current § 537.053.

As amended, § 537.053 now provides in its entirety:

1. Since the repeal of the Missouri Dram Shop Act in 1934 (Laws of 1933–34, extra session, page 77), it has been and continues to be the policy of this state to follow the common law of England, as declared in section 1.010, RSMo, to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons.

2. Notwithstanding subsection 1 of this section, a cause of action may be brought by or on behalf of any person who has suffered personal injury or death against any person licensed to sell intoxicating liquor by the drink for consumption on the premises when it is proven by clear and convincing evidence that the seller knew or should have known that intoxicating liquor was served to a person under the age of twenty-one years or knowingly served intoxicating liquor to a visibly intoxicated person.

3. For purposes of this section, a person is "**visibly intoxicated**" when inebriated to such an extent that the impairment is shown by significantly uncoordinated physi-

liability came in *Ritchie v. Goodman*, 161 S.W.3d 851 (Mo.App. S.D.2005), a wrongful death action where the seventeen year old decedent died on March 23, 2001, slightly more than two months after Ms. Calloway. In *Ritchie*, a party was held at the respondents' home where alcoholic beverages were provided and consumed by those in attendance. *Id.* at 852–53. The majority of those in attendance were under the age of twenty-one. *Id.* at 853. At some point during the evening, two carloads of party-goers left the party and a short time later, the vehicles collided at high speed, resulting in the death of the Ritchies' daughter. *Id.* They brought a wrongful death action against the respondents claiming social host liability. *Id.* The trial court dismissed the action, and the Ritchies appealed. *Id.* at 854. The Southern District of this Court discussed most of the cases described *supra* and concluded that "Missouri simply does not recognize the theory that a social host is civilly liable." *Id.* at 855. Accordingly, the court affirmed dismissal of the claim. *Id.*

During the 2005 legislative session, the legislature amended § 311.310 to include § 311.310.2, which provides:

> Any owner, occupant, or other person or legal entity with a lawful right to the exclusive use and enjoyment of any property who knowingly allows a person under the age of twenty-one to drink or possess intoxicating liquor or knowingly fails to stop a person under the age of twenty-one from drinking or possessing intoxicating liquor on such property, unless such person allowing the person under the age of twenty-one to drink or possess intoxicating liquor is his or her parent or guardian, is guilty of a class B misdemeanor. Any second or subsequent violation of this subsection is a class A misdemeanor.

As noted supra, § 311.310.2 became effective on September 15, 2005. It is noteworthy that Ms. Coons filed her wrongful death action on January 7, 2004, three years after her daughter's death but almost two years before § 311.310.2 took effect. In any event, Ms. Coons now argues that § 311.310.2 should be viewed as a declaration of public policy and that this court should rely on it to impose liability on social hosts who permit alcoholic beverages to be served to, or consumed by, people under the age of twenty-one on their property.

 We must respectfully decline Ms. Coons's invitation.

Missouri, of course, does recognize that a cause of action for civil damages may

---

cal action or significant physical dysfunction. A person's blood alcohol content does not constitute prima facie evidence to establish that a person is visibly intoxicated within the meaning of this section, but may be admissible as relevant evidence of the person's intoxication.

4. Nothing in this section shall be interpreted to provide a right of recovery to a person who suffers injury or death proximately caused by the person's voluntary intoxication unless the person is under the age of twenty-one years. No person over the age of twenty-one years or their dependents, personal representative, and heirs may assert a claim for damages for personal injury or death against a seller of intoxicating liquor by the drink for consumption on the premises arising out of the person's voluntary intoxication.

5. In an action brought pursuant to subsection 2 of this section alleging the sale of intoxicating liquor by the drink for consumption on the premises to a person under the age of twenty-one years, proof that the seller or the seller's agent or employee demanded and was shown a driver's license or official state or federal personal identification card, appearing to be genuine and showing that the minor was at least twenty-one years of age, shall be relevant in determining the relative fault of the seller or seller's agent or employee in the action.

6. No employer may discharge his or her employee for refusing service to a visibly intoxicated person.

be based upon an act which is violative of a criminal statute or a penal municipal ordinance. In recognizing that such may be the basis of liability, the requirement has been laid down that the person injured must be one of the class for whose benefit an ordinance was adopted and the ordinance must have been enacted to protect persons or property, conserve public health or promote public safety.

*Moore v. Riley,* 487 S.W.2d 555, 558 (Mo. 1972). Even were we to find that § 311.310.2 represents a dramatic shift in public policy as argued by Ms. Coons,[8] that the statute was intended to protect a class of persons in situations similar to that which resulted in Ms. Calloway's death, and that the purpose of the statute was to protect or promote public safety, we could provide no relief for Ms. Coons. Article I, § 13 of the Missouri Constitution prohibits the retrospective application of laws enacted by the legislature. " 'Retroactive' or 'retrospective' laws are generally defined, from a legal viewpoint, as those which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past.' " *Barbieri v. Morris,* 315 S.W.2d 711, 714 (Mo.1958). In *Andres,* the Missouri Supreme Court held that § 537.053, RSMo Cum. Supp.1985, "may not constitutionally be given ... retrospective application." *Andres,* 730 S.W.2d at 553. In doing so, the Court stated:

> Respondents' cause of action accrued with the death of their son on December 12, 1979, their first amended petition was filed December 9, 1981 and the trial

had in May of 1985. Section 537.053, only became effective on September 28, 1985, more than five years after respondents' claim accrued and more than three years after its filing and it may not constitutionally be given the retrospective application urged by appellants. *Id.* (italics omitted).

In this case, Ms. Coons's alleged cause of action accrued with the death of her daughter on January 13, 2001. Ms. Coons's petition was not filed until three years later, on January 7, 2004, and § 311.310.2 did not take effect until almost two years after that, on September 15, 2005. Giving the statute the effect Ms. Coons requests would impose a new duty on the respondents that did not exist under prior law and did not exist at the time Ms. Calloway died. Consequently, the statute cannot constitutionally be given that retrospective application. Therefore, the enactment of § 311.310.2 cannot be employed to create a cause of action for Ms. Coons.

Since this conclusion is dispositive of this case, we leave to another day the determination whether a civil claim may be based on a violation of § 311.310.2. While this court has the utmost sympathy for Ms. Coons and the tragic loss she has experienced, we cannot create a cause of action where none exists. For the foregoing reasons, we affirm the judgment of the trial court dismissing Ms. Coons's claims against Berry on the basis of social host liability.

All concur.

---

8. In conjunction with the amendment to § 537.053 repealing that part of the former statute that declared the holdings in *Carver v. Schafer,* 647 S.W.2d 570 (Mo.App.1983); *Sampson v. W.F. Enterprises, Inc.,* 611 S.W.2d 333 (Mo.App.1980); and *Nesbitt v. Westport Square, Ltd.,* 624 S.W.2d 519 (Mo.App.1981) be abrogated.