

# In the
# Missouri Court of Appeals
# Western District

SABRINA ZELLER,               )
                                      )
             Appellant,      )   WD79016 Consolidated with
and                      )   WD79033
                                        )
KRISTEN KANTNER,       )   OPINION FILED: September 6, 2016
                                        )
             Appellant,      )
                                        )
v.                         )
                                        )
CAMERON SCAFE,         )
                                        )
             Respondent.    )

**Appeal from the Circuit Court of Lafayette County, Missouri**
The Honorable Dennis A. Rolf, Judge

Before Division Two: Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

Sabrina Zeller ("Zeller"), plaintiff *ad litem* for her deceased son Cody Turner ("Turner"), appeals from the trial court's judgment dismissing her petition against Cameron Scafe ("Scafe"). Kristen Kantner ("Kantner") appeals from the trial court's judgment dismissing her cross-petition against Scafe. Zeller and Kantner (collectively "Appellants") argue on appeal that the trial court's dismissal of their claims against Scafe

was erroneous because each stated a claim for negligence *per se* given Scafe's violation of section 311.310.[1] We affirm.

## Factual and Procedural History

When reviewing the dismissal of a petition for failure to state a claim, we treat the facts alleged in the petition as true and construe those facts liberally in favor of the plaintiff. *Gordon v. City of Kansas City*, 450 S.W.3d 793, 795 n.1 (Mo. App. W.D. 2014). We summarize the relevant facts, consistent with this standard.

On May 12, 2012, Turner attended a "keg party" at Scafe's house in Oak Grove. Brian Beebe, Jr. ("Beebe"), Amy Greenstreet ("Greenstreet"), and Kantner were also at the party. Scafe knowingly allowed Beebe and other minors in attendance to consume intoxicating liquor and knowingly failed to stop Beebe and other minors from consuming intoxicating liquor, a class B misdemeanor pursuant to section 311.310.2.

At approximately 6:30 a.m., Beebe, Kantner, and Turner left the party in a Jeep Wrangler loaned to them by Greenstreet. Turner initially drove the vehicle but became fatigued. Turner moved to the console of the vehicle, and Beebe took over driving the vehicle. At approximately 7:30 a.m., Beebe failed to negotiate a curve. The vehicle skidded off the roadway, struck an embankment, and overturned. Beebe panicked and fled the scene on foot. Beebe contacted his grandfather, Jerry Nussbaum ("Nussbaum"), and asked Nussbaum to pick him up.[2]

---

[1] All statutory references are to RSMo 2000 as amended unless otherwise indicated.

[2] After picking Beebe up, Nussbaum went to the scene of the accident. When asked by police officers about his presence at the scene, he gave vague answers so as not to implicate Beebe.

Turner was thrown from the vehicle. Turner suffered a head injury, multiple skull fractures, and epidural and subdural hematomas, but was alive immediately following the accident. Kantner was trapped by her seatbelt in the vehicle. Despite her injuries, Kantner was able to call emergency services and run to a nearby residence for help. Turner was air transported to a nearby hospital, where he was pronounced dead.

Zeller, as plaintiff *ad litem* for Turner, filed a petition for damages arising from Turner's death and then later filed a first amended petition ("Petition").[3] Zeller asserted a claim for wrongful death against Scafe based on a theory of negligence *per se* given Scafe's violation of section 311.310.2. Zeller also asserted claims for negligence and wrongful death against Kantner on the theory that she did not prevent Beebe from operating the vehicle.

Kantner filed a cross-petition and then an amended cross-petition ("Cross-Petition").[4] The Cross-Petition alleged a claim of negligence against the decedent, Turner, because he turned over operation of the vehicle to an obviously intoxicated Beebe. The Cross-Petition also asserted a claim for negligence *per se* against Scafe based on his violation of section 311.310.2.

Scafe filed motions to dismiss Zeller's and Kantner's claims against him for failure to state a claim upon which relief can be granted, arguing that Missouri law does not recognize a cause of action, by legislation or at common law, against social hosts who

_____

[3]Zeller settled her claims against Beebe, Greenstreet, and Nussbaum before her first amended petition was filed.

[4]Kantner's amended cross-petition abandoned claims earlier asserted against Beebe, Greenstreet, and Nussbaum. As an aside, Rule 55.01 lists all of the pleadings that are recognized by our courts. A cross-petition is not among them. We use the title "cross-petition" in this opinion only because that is the title given the pleading in the record.

3

provide alcoholic beverages to minors. Kantner filed a motion to dismiss Zeller's claims against her because Missouri law does not impose a duty on passengers to prevent the operation of a motor vehicle by another.

The trial court granted Kantner's motion to dismiss Zeller's claims against her. The trial court also granted Scafe's motions to dismiss Zeller's and Kantner's claims against him.

Zeller appealed. We dismissed the appeal for want of a final judgment because Kantner's claim against Turner remained pending before the trial court. *See Zeller v. Scafe*, 455 S.W.3d 503 (Mo. App. W.D. 2015). Kantner then voluntarily dismissed the claim against Turner.

Zeller and Kantner appeal the trial court's judgment dismissing their claims against Scafe.[5]

## Standard of Review

We review the trial court's grant of a motion to dismiss *de novo*. *Davison v. Dairy Farmers of Am., Inc.*, 449 S.W.3d 81, 83 (Mo. App. W.D. 2014).

> A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.

---

[5]Zeller has not appealed the dismissal of her claim against Kantner.

4

*Coons v. Berry*, 304 S.W.3d 215, 217 (Mo. App. W.D. 2009). "[T]o avoid dismissal, the petition must invoke substantive principles of law entitling the plaintiff to relief and ultimate facts informing the defendant of that which plaintiff will attempt to establish at trial." *Id.* at 217-18.

## Analysis

Zeller and Kantner urge the same point on appeal. The Appellants assert that the trial court erred in dismissing their negligence *per se* claims against Scafe because the factual allegations in the Petition and Cross-Petition establish that Scafe violated section 311.310.2 which imposes criminal liability on an owner or occupier of property who allows a person under the age of twenty-one years to drink, or fails to stop said person from drinking, intoxicating liquor on the property. We agree that the factual allegations in the Petition and Cross-Petition, taken as true, establish that Scafe violated section 311.310.2. However, the issue presented is whether these factual allegations invoke substantive principles of law entitling the Appellants to relief. More specifically stated, we must determine whether Scafe's violation of section 311.310.2 supports civil liability based on the theory of negligence *per se*.

Appellants concede that it has been long settled under Missouri law that a social host who furnishes alcohol to an intoxicated guest or a minor has no civil liability to the intoxicated guest, the minor, or to an injured third party. *See Coons*, 304 S.W.3d at 218-22 (summarizing the historical development of the law foreclosing civil liability for social hosts based on theories of both common law negligence and negligence *per se*). The issue of social host liability was addressed as a matter of first impression in

5

*Harriman v. Smith*, 697 S.W.2d 219, 220 (Mo. App. E.D. 1985), in which the court considered: (1) whether common law negligence supports a cause of action against a social host; and (2) whether a social host's violation of section 311.310 constitutes negligence *per se*.

With respect to the theory of common law negligence, the *Harriman* court relied on the difference between a social guest who occupies the status of a licensee and a business invitee. *Id.* at 221. "While differences between invitees, licensees, and trespassers with respect to the duty owed them by the possessor of land largely disappears once the presence of the visitor is known and a uniform duty, that of reasonable care, is owed to each as to the activities on the premises, distinctions based on status still remain." *Id.* (citation omitted). A social host, unlike business dispensers of intoxicating beverages, "realizes no pecuniary gain from serving alcoholic beverages to a guest," and a social host has far less control and expertise in identifying intoxication than business dispensers. *Id.* Thus, the *Harriman* court concluded that any extension of common law negligence principles to impose a duty on social hosts should be made by the legislature, not the courts, because the legislature is better equipped to "reasonably measure the widespread repercussions from extending 'dramshop' liability to the social host." *Id.* at 222. Specifically, the *Harriman* court held that "difficulties in . . . imposition of a duty of inquiry upon social hosts . . . persuad[e] us to defer decision making to the legislature." *Id.*

The *Harriman* court also considered whether section 311.310 (RSMo 1978), a statute imposing criminal penalties on "any licensee" and "any person" who sells, vends,

6

gives away, or otherwise supplies intoxicating liquor to minors or intoxicated persons, provides a statutory standard of care for social hosts supporting a theory of negligence *per se*. *Id.* at 222-23. The court held:

> In looking at the general scheme of The Liquor Control Law under which [section] 311.310 falls, the obvious intent of the legislature is the control of liquor licensees in the dispensing and sale of alcohol. In the context of the entire act and its stated purposes, the apparent intention is to regulate the commercial sale of liquor, not its use in a social setting. . . . Section 311.310 is broken into two distinct parts: one dealing with liquor licensees; the other, with "any person." Although in *Sampson v. W.F. Enterprises, Inc.,* the court relied upon [section] 311.310 to impose civil liability on tavern owners, [611 S.W.2d 333, 337 (Mo. App. W.D. 1980)], nothing indicates the extension of civil liability to a social host who would be within the second part of the statute.
>
> Furthermore, legislative failure to define and expound on the duties of non-business dispensers under the Liquor Control Law is indicative of its intent that they not be held civilly liable under [section] 311.310. If liability is to be imposed upon a social host, statutory guidelines governing the social host's standard of care should be set forth, as are the explicit guidelines governing liquor licensees. For example, [section] 311.328 provides a defense for any "licensee or the servant, agent or employee thereof" to a charge of serving alcoholic beverages to a minor. Nowhere is a social host or "any person" mentioned. Section 311.328 clearly applies only to liquor licensees. Therefore, we conclude the statutory language in [section] 311.310 does not provide a civil claim for relief against social hosts.

*Id.* at 223.

Two years later, in *Andres v. Alpha Kappa Lambda Fraternity*, our Supreme Court considered whether a local fraternity chapter could be held liable for furnishing intoxicating beverages to a minor who later died as a result of acute alcohol intoxication. 730 S.W.2d 547, 549 (Mo. banc 1987). The Court concluded that the local fraternity chapter occupied the status of social host and relied on *Harriman* to conclude that the deceased minor's parents failed to state a claim. *Id.* at 553. In particular, the Court stated

7

that it "[found] the analysis in *Harriman* compelling and adopt[ed] it in the disposition of this cause." *Id.*

Following the Supreme Court's adoption of the *Harriman* analysis in *Andres*, the law in Missouri has been settled that "neither principles of common law negligence nor any statutes enacted by the Missouri legislature, in particular section 311.310, impose[] a duty upon *social hosts* to abstain from furnishing alcoholic beverages to individuals under twenty-one years of age." *Ritchie v. Goodman*, 161 S.W.3d 851, 854 (Mo. App. S.D. 2005) (citing *Andres*, 730 S.W.2d at 553). "Missouri simply does not recognize the theory that a social host is civilly liable." *Id.* at 855.

On appeal, the Appellants have abandoned their dismissed claims against *Scafe* on a theory of common law negligence. They accept, therefore, as found in *Harriman* and endorsed by *Andres*, that any extension of common law negligence principles to impose a duty on social hosts must be undertaken by the legislature. *Andres*, 730 S.W.2d at 553; *Harriman*, 697 S.W.2d at 221. Here, the Appellants urge only that their claims of negligence *per se* based on a violation of section 311.310 should not have been dismissed. The Appellants acknowledge *Andres* but argue the decision is no longer controlling because section 311.310 was amended in 2005, reflecting the legislature's intent to abrogate *Andres* by imposing a standard of care on social hosts that will support a civil remedy. We disagree.

When *Andres* was decided, section 311.310 (enacted in 1947) read as follows:

> Any licensee under this chapter, or his employee, who shall sell, vend, give away or otherwise supply any intoxicating liquor in any quantity whatsoever to any person under the age of twenty-one years, or to any

8

person intoxicated or appearing to be in a state of intoxication, or to a habitual drunkard, *and any person whomsoever except his or her parent or guardian who shall procure for, sell, give away or otherwise supply intoxicating liquor to any person under the age of twenty-one years*, or to any intoxicated person or any person appearing to be in a state of intoxication, or to a habitual drunkard, *shall be deemed guilty of a misdemeanor*; provided, however, that this section shall not apply to the supplying of intoxicating liquor to a person under the age of twenty-one years for medical purposes only, or to the administering of said intoxicating liquor to any person by a duly licensed physician.

(Emphasis added.) The emphasized language in section 311.310 was addressed in *Harriman*, and again by our Supreme Court in *Andres*, and was found not sufficient to establish a standard of care for social hosts which would support civil liability on a theory of negligence *per se*. 730 S.W.2d at 549-50, 553.

In 2005, the legislature amended section 311.310. The aforesaid highlighted content of section 311.310 was not materially changed, save to be numbered as subsection 1.[6] Two new subsections were adopted as follows:

2.    *Any owner, occupant, or other person or legal entity with a lawful right to the exclusive use and enjoyment of any property who knowingly allows a person under the age of twenty-one to drink or possess intoxicating liquor or knowingly fails to stop a person under the age of*

---

[6]The legislature amended section 311.310 in 1990. That amended version of section 311.310 read as follows:

Any licensee under this chapter, or his employee, who shall sell, vend, give away or otherwise supply any intoxicating liquor in any quantity whatsoever to any person under the age of twenty-one years, or to any person intoxicated or appearing to be in a state of intoxication, or to a habitual drunkard, *and any person whomsoever except his parent or guardian who shall procure for, sell, give away or otherwise supply intoxicating liquor to any person under the age of twenty-one years*, or to any intoxicated person or any person appearing to be in a state of intoxication, or to a habitual drunkard, *shall be deemed guilty of a misdemeanor*, except that this section shall not apply to the supplying of intoxicating liquor to a person under the age of twenty-one years for medical purposes only, or to the administering of said intoxicating liquor to any person by a duly licensed physician. *No person shall be denied a license or renewal of a license issued under this chapter solely due to a conviction for unlawful sale or supply to a minor when serving in the capacity as an employee of a licensed establishment.*

(Emphasis added.) The bold text remained essentially unchanged in the 1990 amendment of section 311.310. The italicized text added at the end of section 311.310 appears to have been the motivating factor for the 1990 amendment.

*twenty-one from drinking or possessing intoxicating liquor on such property*, unless such person allowing the person under the age of twenty-one to drink or possess intoxicating liquor is his or her parent or guardian, *is guilty of a class B misdemeanor*. Any second or subsequent violation of this subsection is a class A misdemeanor.

3.    It shall be a defense to prosecution under this section if:

(1)    The defendant is a licensed retailer, club, drinking establishment, or caterer or holds a temporary permit, or an employee thereof;

(2)    The defendant sold the intoxicating liquor to the minor with reasonable cause to believe that the minor was twenty-one or more years of age; and

(3)    To purchase the intoxicating liquor, the person exhibited to the defendant a driver's license, Missouri nondriver's identification card, or other official or apparently official document, containing a photograph of the minor and purporting to establish that such minor was twenty-one years of age and of the legal age for consumption of intoxicating liquor.

(Emphasis added.)

The Appellants argue that newly added subsection 2 reflects the legislature's intent to abrogate *Andres* with respect to social hosts who own, occupy, or have exclusive use of property. There are several flaws in this argument.

First, the argument ignores that the statutory language construed by *Andres* as insufficient to support social host civil liability on a theory of negligence *per se* remained in section 311.310.1 following the 2005 amendment. "The legislature is presumed to have acted with a full awareness and complete knowledge of the present state of the law, including judicial and legislative precedent," when it amended section 311.310. *Kolar v. First Student, Inc.*, 470 S.W.3d 770, 777 (Mo. App. E.D. 2015). The Appellants do not explain why the legislature would have left untouched language deemed insufficient to create civil liability for social hosts who give or supply intoxicating liquor to underage

10

persons, while intending to create civil liability for social hosts who allow or fail to stop underage drinking or possession of intoxicating liquor on property the social host owns, occupies, or exclusively controls. Were we to adopt the Appellant's argument that the legislature intended to create social host civil liability for a violation of section 311.310.2, though not for section 311.310.1, we would be left with the prospect of anomalous and incongruent results. An owner or occupier of property who gives intoxicating liquor to a person under the age of twenty-one years will have violated both section 311.310.1 (prohibiting "any person . . . [from] giv[ing] away or otherwise supply[ing] intoxicating liquor to any person under the age of twenty-one years) and section 311.310.2 (prohibiting the owner or occupier of property from "allow[ing] a person under the age of twenty-one to drink or possess intoxicating liquor"). Yet the person would be exposed to civil liability on a theory of negligence *per se* for only the violation of section 311.310.2. We are not persuaded that the legislature enacted section 311.310.2 with this intent. Rather, as the plain language of section 311.310.2 suggests, the legislature simply intended to expand the category of persons subject to criminal liability to include owners, occupiers, and those in exclusive control of property who knowingly allow a minor to drink or possess intoxicating beverages, or who knowingly fail to stop a minor from drinking or possessing intoxicating beverages, on the property.

Second, although section 311.310.2 plainly extends criminal liability to include a new category of persons, "a statute which creates a criminal offense and provides a penalty for its violation, will not be construed as creating a new civil cause of action independently of the common law, unless such appears by express terms or by clear

11

implication to have been the legislative intent." *Christy v. Petrus*, 295 S.W.2d 122, 126 (Mo. banc 1956). Here, Appellants concede that section 311.310.2 makes no provision for civil liability. The legislature is deemed to have known when it amended section 311.310 that *Andres* foreclosed social host liability for any violation of section 311.310, and that unexpressed civil liability will not be implied by an expansion of criminal liability. *Kolar*, 470 S.W.3d at 777. There is nothing in the language of section 311.310 as amended, in the historical development of the statute, or from any other source to indicate that the legislature intended section 311.310.2 to abrogate the rationale of *Andres*.

In fact, and to the contrary, when the legislature has desired to abrogate Missouri case law addressing the subject of civil liability for furnishing alcohol in violation of section 311.310, it has no difficulty doing so in plain and clear terms. In response to *Sampson v. W.F. Enterprises, Inc.*, 611 S.W.2d 333 (Mo. App. W.D. 1980), *Nesbitt v. Westport Square, Ltd.*, 624 S.W.2d 519 (Mo. App. W.D. 1981), and *Carver v. Schafer*, 647 S.W.2d 570 (Mo. App. E.D. 1983), each of which imposed civil dram shop liability on licensees who sold alcohol in violation of section 311.310, the legislature enacted section 537.053, effective September 28, 1985. Section 537.053.2 (RSMo 1986) expressly abrogated the *Sampson*, *Nesbitt*, and *Carver*, and plainly expressed that it is the policy of the State of Missouri "to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons." Section 537.053.1 (RSMo 1986). Though applicable by its plain terms only to dram shop liability, and not to social host liability, *Andres*, 730

12

S.W.2d at 551, section 537.053 (RSMo 1986) nonetheless demonstrates the legislature's capacity to unambiguously abrogate settled decisional law when that is its intent. The legislature cannot be said to have impliedly abrogated *Andres* in 2005 when section 311.310.2 is absolutely silent on the subject of civil liability for social hosts. *Christy*, 295 S.W.2d at 126.

The Eastern District reached the same conclusion in *Otte v. Edwards*, 370 S.W.3d 898 (Mo. App. E.D. 2012). There, the parents of a minor who consumed alcoholic beverages at a party and who later died after wandering onto a highway sued the hosts of the party. *Id.* at 899-900. The minor's parents argued that the trial court erred in dismissing their petition because the 2005 amendment of section 311.310 to include subsection 2 reflected the legislature's intent to impose a duty on landowners to minors, and thus created a standard of care supporting civil liability for violation of the statute. *Id.* at 901. The *Otte* court held that "[a] plain reading of the 2005 amendment shows that it merely adds owners and occupiers of land where underage drinking takes place to the list of misdemeanor offenders set out in subsection 1 that sell, procure, or otherwise give alcohol to minors." *Id.* at 902. The amendment to section 311.310 does "nothing to change the statute from the misdemeanor criminal statute that it is" and "by its very terms does not add any civil liability to the statute where there formerly was none." *Id.* Thus, the legislature's amendment of section 311.310 does nothing to disturb the holding of *Andres*; section 311.310 does not impose a duty upon social hosts to abstain from furnishing intoxicating beverages to minors. *Id.*

13

The Appellants argue that we should disregard *Otte*. They argue that section 311.310.2 "eliminated, in large part, many of the concerns raised by the Court in *Harriman*." [Kantner's Brief, p. 24] We disagree. The Appellants argue that section 311.310.2 establishes a standard of care for social host's independent of licensees who furnish intoxicating liquor, an argument which presumes that section 311.310.2 is limited in its application to social hosts. However, section 311.310.2's reference to "[a]ny owner, occupant, or other person or legal entity with a lawful right to the exclusive use and enjoyment of any property" is not limited to social hosts, and could easily include licensees and commercial or business settings within its scope. Demonstrative of this point is newly added section 311.310.3(1)-(3), which specifies a defense to any prosecution under section 311.310 of *licensed* retailers, clubs, drinking establishments, or caterers with temporary permits who make *sales* of intoxicating liquor to one reasonably believed to be twenty-one or more years of age based on the use of a fake identification card. Just as was the concern expressed in *Harriman*, no defenses are afforded to social hosts who violate section 311.310.2. 697 S.W.2d at 223. Though a violation of section 311.310.2 requires "knowing" conduct, this mens rea requirement reflects the fact that unlike section 311.310.1, a violation of section 311.310.2 is chargeable as a class B misdemeanor punishable by a term of imprisonment not exceeding six months. *See* section 558.011.1(6). The inclusion of a mens rea requirement in section 311.310.2 is not indicative of cryptic legislative intent to abrogate *Andres* by establishing a standard of care imposing civil liability on social hosts.

14

As our Supreme Court has observed, "imposing liability upon social hosts would have a 'substantial impact on everyday social and family affairs' and therefore the parameters of any duty imposed on social hosts should be determined by the legislature." *Andres*, 730 S.W.2d at 553 (quoting *Harriman*, 697 S.W.2d at 221). Nothing in the legislature's 2005 amendment of section 311.310 indicates that the legislature intended section 311.310.2 to dramatically alter Missouri's longstanding prohibition against the imposition of civil liability on social hosts who furnish intoxicating beverages to minors. *See Coons*, 304 S.W.3d at 223 (noting that, if section 311.310.2 prescribes a statutory duty for social hosts to abstain from furnishing intoxicating beverages to minors, the statute would represent a dramatic shift in public policy). If the legislature had intended section 311.310.2 to create civil liability for social hosts where no such liability previously existed, it could easily have expressed this intent. It has analogously done so with respect to licensees by section 537.053.2,[7] which provides, in relevant part:

> [A] cause of action may be brought by or on behalf of any person who has suffered personal injury or death against any person licensed to sell intoxicating liquor by the drink for consumption on the premises when it is proven by clear and convincing evidence that the seller knew or should have known that intoxicating liquor was served to a person under the age of twenty-one years or knowingly served intoxicating liquor to a visibly intoxicated person.

The legislature has not expressed a similar intent with respect to social hosts. "In the absence of any indication of such intent, we are constrained to assume that had the legislature desired to provide for enforcement by civil action as well as by criminal

---

[7]Section 537.053.2 was amended in 2002 after its predecessor, section 537.053.3, was declared unconstitutional for conditioning civil liability on a criminal conviction for violation of section 311.310. *See Piskorski v. Larice*, 70 S.W.3d 573 (Mo. App. E.D. 2002).

prosecution, such a provision would have been incorporated therein." *Otte*, 370 S.W.3d at 903; *see also Christy*, 295 S.W.2d at 126 (holding that intent to impose civil liability will not be imposed where the legislature has in other respects made "careful provision for the rights and compensation" of those injured by a violation of a statute).

While we have the utmost sympathy for Zeller and Kantner given the tragic loss and injuries each has experienced, we cannot create a cause of action where none exists. The trial court did not err in dismissing Zeller's and Kantner's negligence *per se* claims against Scafe.

## Conclusion

We affirm the trial court's judgment.

_____
Cynthia L. Martin, Judge

All concur